# UNITED GAS PIPE LINE CO. *v.* IDEAL CEMENT CO. ET AL.

No. 61. Argued December 13, 1961.—Decided March 19, 1962.

*E. Dixie Beggs* argued the cause and filed briefs for appellant.

*James Lawrence White* argued the cause for Ideal Cement Co., appellee. With him on the briefs were *Marion R. Vickers, Stephen H. Hart* and *John Fleming Kelly. S. P. Gaillard, Jr.* filed a brief for Scott Paper Co., appellee.

*Charles S. Rhyne,* by special leave of Court, 368 U. S. 805, argued the cause for the City of Mobile, Alabama, as *amicus curiae,* urging reversal. With him on the brief was *Herzel H. E. Plaine.*

PER CURIAM.

This is an appeal from the Court of Appeals' reversal of a summary judgment entered for the appellant in the United States District Court for the Southern District of Alabama. The suit, based on diversity of citizenship, sought contractual reimbursement of taxes paid to the City of Mobile relative to sales of natural gas to the appellees. They defended on the ground that the contracts contemplated reimbursement only of valid tax payments, and that the License Code of the City of Mobile, § 1, par. 193 (1955), under which the tax was exacted and paid, was invalid under the Commerce Clause of the United States Constitution. The Court of Appeals sustained this contention, by interpreting both the primary and enforcement provisions of the License Code and its surrounding state legislation as operating not to tax a separable local portion of interstate commerce but as a means of licensing appellant's right of entry into the City from without the State. 282 F. 2d 574, 580. We postponed determination of our jurisdiction to consideration of the merits, 366 U. S. 916, and now find that the case is properly here under 28 U. S. C. § 1254 (2).

The interpretation of state law by the Court of Appeals, in an opinion by its Alabama member, was rendered in advance of construction of the License Code by the courts of the State, which alone, of course, can define its authoritative meaning. We ought not, certainly on this record, either accept the Court of Appeals' construction or, on an independent consideration, reject what the Alabama Supreme Court may later definitively approve. The availability of appropriate declaratory-judgment proceedings under Ala. Code, Tit. 7, §§ 156–168 (1940), avoids this unsatisfactory dilemma. Wise judicial administration in this case counsels that decision of the federal

question be deferred until the potentially controlling state-law issue is authoritatively put to rest.  See *Leiter Minerals, Inc.*, v. *United States,* 352 U. S. 220, 228–229. Accordingly, the judgment of the Court of Appeals is vacated to permit a construction of the License Code of the City of Mobile, so far as relevant to this litigation, to be sought with every expedition in the state courts.

*It is so ordered.*

MR. JUSTICE WHITTAKER took no part in the disposition of this case.

MR. JUSTICE DOUGLAS.

This case should be disposed of here; the long-drawn-out litigation* foisted on the parties by the Court is needless.   No matter how the local ordinance is construed the tax is constitutional.

---

*The practice of remitting parties who sue in court to an administrative remedy (see, *e. g., Pennsylvania R. Co.* v. *United States,* 363 U. S. 202) or of remitting those who sue in a federal court to a state court (*Clay* v. *Sun Insurance Office,* 363 U. S. 207; Clark, Federal Procedural Reform and States' Rights, 40 Tex. L. Rev. 211) places a financial burden on litigants, which can be afforded only by those who can take the cost as a tax deduction or get reimbursement through increased rates.   For a case where the parties at the end of 14 years were still litigating a $7,000 (approx.) claim after starting in one court, being shunted to an agency, and then ending in a different court, see *Pennsylvania R. Co.* v. *United States, supra.*

In Gardner, The Administrative Process, Legal Institutions Today and Tomorrow (1959), pp. 139–140, it was said:

"Anyone who considers judicial review of agency action must allow about a year if he has access to direct review by a court of appeals and about two years if he must file in a district court and then carry the controversy to the court of appeals.   If a certiorari question should develop which would warrant Supreme Court review, another year should be added.   If the result of the review should be to require further agency proceedings, yet another year or so must be added. Except for the litigant who advantages by delay, not many adminis-

Congress under the Natural Gas Act, as amended, would have the authority to prevent interstate pipelines from delivering any gas for industrial use. *Federal Power Comm'n* v. *Transcontinental Gas Pipe Line Corp.*, 365 U. S. 1. Yet once the interstate movement commences, the line between permissible and impermissible local regulation is no longer a puzzle.

United is an interstate pipeline company that brings natural gas into Alabama and supplies it in the City of Mobile to a distributor, Mobile Gas. United delivers gas to Mobile Gas at three stations not for resale, but for delivery to appellees under contracts between appellant and appellees. The gas, when delivered to Mobile Gas, is at a lower pressure than when it enters the State. When Mobile Gas delivers it to the industrial customers here involved, the gas is at a still lower pressure. The case is therefore on all fours with *East Ohio Gas Co.* v. *Tax Comm'n*, 283 U. S. 465. In speaking of the delivery of gas at a reduced pressure within Ohio by an interstate carrier, the Court said that the gas was then

> "divided into the many thousand relatively tiny streams that enter the small service lines connecting such mains with the pipes on the consumers' premises. So segregated the gas in such service lines and

---

trative issues warrant an investment of time such as this. In probably a majority of the circumstances, it would be sounder business practice to adjust at once to the agency decision and go on from there, rather than to endure several years of uncertainty in order to try to improve the result.

"The matter of expense is closely related to that of delay. It is not possible to be precise, and surely it is not polite to mention money. Yet none can discuss realistically judicial review unless he recognizes that an issue of average complexity cannot adequately be carried to the courts except at a cost which will range upward from $5,000." See also Landis, Report on Regulatory Agencies to the President-Elect (1960), pp. 5–13.

The cost of printing records for this Court is now $3.80 a page.

pipes remains in readiness or moves forward to serve as needed. The treatment and division of the large compressed volume of gas is like the breaking of an original package, after shipment in interstate commerce, in order that its contents may be treated, prepared for sale and sold at retail. . . . It follows that the furnishing of gas to consumers in Ohio municipalities by means of distribution plants to supply the gas suitably for the service for which it is intended is not interstate commerce but a business of purely local concern exclusively within the jurisdiction of the State." *Id.*, at 471.

Here too the package is broken on delivery of the gas intrastate to Mobile Gas, the distributor, at a reduced pressure.

It matters not that the City of Mobile calls the tax levied here a "license tax." In *Interstate Pipe Line Co.* v. *Stone*, 337 U. S. 662, Mississippi levied a "privilege" tax on the gross receipts of a pipeline that was bringing oil from Mississippi fields to loading racks in that State, where the oil was pumped into railroad cars for shipment out of state.

Mr. Justice Rutledge, speaking for himself and three others, said:

"Since all the activities upon which the tax is imposed are carried on in Mississippi, there is no due process objection to the tax. The tax does not discriminate against interstate commerce in favor of competing intrastate commerce of like character. The nature of the subject of taxation makes apportionment unnecessary; there is no attempt to tax interstate activity carried on outside Mississippi's borders. No other state can repeat the tax. For these reasons the commerce clause does not invalidate this tax." *Id.*, at 667–668.

Mr. Justice Burton, who also joined in the judgment, approved the tax for the following reason: "I concur in the judgment solely on the ground that the tax imposed by the State of Mississippi was a tax on the privilege of operating a pipe line for transporting oil in Mississippi in intrastate commerce and that, as such, it was a valid tax." *Id.*, at 668.

In *Southern Natural Gas Corp.* v. *Alabama,* 301 U. S. 148, an interstate pipeline company made deliveries in Alabama to three distributors and one industrial user. These activities were held to be local, on which a non-discriminatory franchise tax could be levied. In *Panhandle Eastern Pipe Line Co.* v. *Public Service Comm'n,* 332 U. S. 507, 514, direct sales by interstate pipelines to local consumers (as distinguished from deliveries to local distributing companies for resale) were held to be subject to state regulation. Speaking of the Natural Gas Act, we said:

> "Congress, it is true, occupied a field. But it was meticulous to take in only territory which this Court had held the states could not reach. That area did not include direct consumer sales, whether for industrial or other uses. Those sales had been regulated by the states and the regulation had been repeatedly sustained. In no instance reaching this Court had it been stricken down." *Id.*, at 519.

The "license tax" in the present case, if it be such, is only a tax on a wholly intrastate activity, *to wit*—the delivery of gas to the local distributor for delivery to local consumers.

This conclusion is more in the tradition of our cases than was *Panhandle Eastern Pipe Line Co.* v. *Public Service Comm'n,* 341 U. S. 329, where a State was allowed to exact from an interstate pipeline company a certificate of public convenience and necessity to make direct deliveries of gas to industrial consumers. The Court said that "the

sale and distribution of gas to local consumers" was a transaction "essentially local" and was "subject to state regulation without infringement of the Commerce Clause." *Id.,* at 333. The sales there proposed were to be made directly from the pipeline to the industrial users. Here the gas first goes to the local distributor, which in turn reduces the pressure and makes delivery to the industrial customers. The local nature of the transaction is more apparent and less complicated than it was in the *Panhandle* case.

I would reverse the judgment below and hold the tax valid.

MR. JUSTICE HARLAN, dissenting.

In my opinion none of the considerations underlying the doctrine of federal judicial abstention (see *Harrison v. N. A. A. C. P.,* 360 U. S. 167, 176–177) call for its application here. There is no reasonable likelihood that a prior state construction of this License Code would either change the complexion of the constitutional issue or avoid the necessity of its eventual adjudication by this Court.

Even were this local enactment to be construed by the state courts to require a license of the appellant as a precondition of engaging in the distribution of natural gas within the City of Mobile, that of itself would not ordain the answer to the constitutional question. See *Southern Natural Gas Corp.* v. *Alabama,* 301 U. S. 148; *East Ohio Gas Co.* v. *Tax Comm'n,* 283 U. S. 465; see also *Illinois Natural Gas Co.* v. *Central Illinois Pub. Serv. Co.,* 314 U. S. 498, 506. Cf. *Northwestern States Portland Cement Co.* v. *Minnesota,* 358 U. S. 450. Nor can I see how such a state adjudication would serve to illumine the nature of United's activities in Mobile.

As I view matters, nothing useful is to be accomplished by remitting the parties to the state courts, and I would adjudicate the constitutional issue now.