Nolan **RICHEY**, Plaintiff,

v.

Robert **SUMOGE** and Yuki Sumoge, his wife, **E. L. Caldwell & Sons, Inc.,** Defendants.

Civ. No. 65–193.

United States District Court
D. Oregon.

Jan. 14, 1966.

Philip A. Levin, Pozzi, Levin & Wilson, Portland, Or., for plaintiff.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendants.

## OPINION

KILKENNY, District Judge:

Defendant E. L. Caldwell & Sons, Inc. (Caldwell), a Texas corporation, and the

manufacturer of a machine which caused an injury to plaintiff, challenges, on its motion to quash the service of process, the court's jurisdiction in this diversity case.

The Sumoges own and operate a fruit orchard in Oregon. Plaintiff was their employee. While plaintiff was operating a brush cutter, manufactured by Caldwell, plaintiff was caught in the drive shaft of the machine and he was severely injured. It is alleged that the drive shaft, and the moving parts connected therewith, were negligently designed in that certain moving parts protruded and that the design did not include appropriate safeguards to prevent injury to those operating the machine.

Caldwell sells its brush cutters in Oregon to a distributor in Portland, which handles and sells products of companies, other than Caldwell. The distributor employs salesmen to sell the products it buys to retail outlets, who in turn sell to the public. The machine under scrutiny was sold to another company which sold to the Sumoges. No written agency agreements are involved. Orders for Caldwell's products were always received through the distributor and these products were shipped to Oregon on a cash basis. Title passed out of Caldwell on the close of the transaction. It has employees in the state of Oregon only "on a very sporadic and casual basis." All orders received by it were through the mail, including the order for the machine in question.

Oregon statutes to be examined in connection with the motion to quash are set forth in the footnote.[1]

The issues raised by the motion are:

(1) Does the shipment of an item into Oregon, for resale by a wholly independent purchaser-distributor, on these facts, constitute a "transaction of business" in Oregon within the meaning of ORS 14.035(1) (a)?

(2) Where it is alleged that there was negligence on the part of a manufacturer in the design of, or production of, a machine and an injury results therefrom in the state of Oregon, has the manufacturer committed a "tortious act" in Oregon within the meaning of ORS 14.035 (1) (b)?

(1). This court has considered the Oregon statutes in numerous cases, including, but not limited to, Hiersche v. Seamless Rubber Co., 225 F.Supp. 682 (D.Or.1963); Rosenlund v. Transnational Ins. Co., 237 F.Supp. 599 (D.Or.1964), and Hicks v. Crane Co., 235 F.Supp. 609 (D.Or.1964). As usual, the facts in each of those cases can be distinguished from the facts here presented. In each of those cases, it was a relatively simple matter to find that the out-of-state company had established, in Oregon, the "minimum contacts" required for due process under International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945); Enco, Inc. v. F. C. Russell Co., 210 Or. 324, 311 P.2d 737 (1957) and McGee v. International Life Ins. Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957).

At first glance, State ex rel. Hupp Motor Car Corp. v. Kanzler, 129 Or. 85, 276 P. 273 (1929), would seem to be exactly in point. That impression, however, disappears when we look at Kanzler (1929), in the light of Chapter 352, Oregon Laws, 1963, the legislative history of which, was thoroughly analyzed and discussed in Hiersche. As was said in Enco, decided long after Kanzler, in referring to the "minimum contact" view expressed in International Shoe, "This new concept simply inquires as to whether or not the contacts of the foreign corporation within the state are such that it should, in fairness, respond to that court's processes." The distinction between "doing business" and "transacting business" was discussed, at some length, in Hiersche.

Be that as it may, I must recognize the argument that the Kanzler viewpoint is not inconsistent with the decision in Grobark v. Addo Machine Co., Inc., 18

---

1. ORS 14.035, ORS 14.030, ORS 14.020, ORS 57.700.

Ill.App.2d 10, 151 N.E.2d 425 (1958), affd. 16 Ill.2d 426, 158 N.E.2d 73 (1959), construing the Illinois long-arm statute, the importance of which the court fully recognized in *Hiersche*. Another case construing the Illinois statute in line with *Grobark*, on facts similar to those before me, is Trippe Manufacturing Co. v. Spencer Gifts, Inc., 270 F.2d 821 (7th Cir. 1959). Both *Grobark* and *Trippe* were decided long prior to the enactment of the Oregon legislation. It is my considered view that jurisdiction is questionable under the "minimum contact" theory and, since I am upholding jurisdiction on the "tortious act" theory, I should leave for future decision the problem presented under issue number (1). If a decision was required on this issue, I would hold that *Grobark* and *Trippe* were enlarged to include jurisdiction in "tortious act" cases involving "minimum contacts" on facts similar to those here presented; by the logic of Gray v. American Radiator & Std. Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), likewise decided before the enactment of the Oregon long-arm statute.

(2). Although defendant makes an able argument supporting its view that the court should abandon the "tortious act" theory applied in *Hiersche* and *Gray*, and follow the restrictive thinking expressed in the recent case of Longines-Wittnauer W. Co. v. Bannes & Reinecke Inc. (Singer v. Walker) 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E.2d 68 (1965), I remain of the belief that the Oregon Supreme Court would follow *Gray*.

No one can read Chief Judge Desmond's specially concurring opinion in *Singer*, without concluding that the majority opinion, insofar as it relates to the meaning of the language, "the commission of a tortious act within this state," is on somewhat tenuous ground.

Furthermore, Judge Fuld, the author of the majority opinion in *Singer* indicates that the New York Legislature, at the time of the passage of the New York long-arm statute, had before it certain proposals of the New York Law Revision Committee and of the Commissioners on Uniform State Laws and in rejecting such proposals, had indicated an intention not to follow *Gray*. In this connection, attention is directed to Judge Fuld's language, 209 N.E.2d p. 79, "Although our analysis of New York's statute and *its legislative history* demonstrates that reliance on the *Gray* case is misplaced, we deem it desirable to examine its underlying rationale in view of the emphasis given the decision by the appellants * * *."

■ The legislative history of the Oregon statutes presents no such problem. The *Gray* case had been decided long prior to the enactment of the Oregon legislation. The legislation was patterned after the Illinois long-arm statute. As I said in *Hiersche*, "The selection and enactment of a statute which has been judicially construed is an adoption of that construction, unless a contrary intent clearly appears." I find no reason to disturb my decision in *Hiersche*, nor reexamine the soundness of *Gray*.

■■ However, I remain of the view that the Oregon Supreme Court should have an opportunity to construe its own statutes. Therefore, on the authority of Blair v. California, 340 F.2d 741 (9th Cir. 1965); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1053 (1959); United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed. 2d 623 (1962), and Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), the proceedings before me in this cause are stayed for a period of two weeks to afford the defendant, E. L. Caldwell & Sons, Inc., a corporation, an opportunity to apply to the Oregon courts for a determination of the legality of the service of process in this cause, under the Oregon Declaratory Judgments Act.[2] If defendant fails to seek such a determination in the Oregon courts within said period of time, plaintiff should so advise the court and I shall

2. ORS 28.010 et seq.

enter an order denying the motion to quash the service on said defendant. If, within said period of time, defendant institutes the indicated proceeding and proceeds to prosecute the same to a final conclusion, the action here pending will be stayed during that period of time.

Since it is my opinion that a judgment of a circuit court of the state of Oregon, although persuasive, would not be controlling, I feel that a decision should be obtained from the Supreme Court of that state.

For the convenience of counsel, and, in order to expedite the proceedings in the state court, all material filed in this cou.t in connection with the motion to quash, including the entire original file, if necessary, may be removed and temporarily used in the state court proceedings.

If the Oregon court prefers not to exercise its discretion and entertain jurisdiction under the indicated legislation, or otherwise, this fact may be brought to the attention of this court by a proper showing, in which case, an order will be entered in conformity with the views previously expressed.