**Charles W. DAVID, Sr., and Beatrice E. David, husband and wife, and parents of Charles W. David, Jr., a minor, and Charles W. David, Jr., a minor, by his Guardian Ad Litem, Beatrice E. David, Plaintiffs,**

v.

**LONDON SHIRT COMPANY, Ltd., a corporation, et al., Defendants.**

Civ. No. 64–549.

United States District Court
D. Oregon.

May 23, 1966.

James M. Burns, Benson, Whitely, McLennan & Burns, Portland, Ore., for plaintiff.

Lamar Tooze, Tooze, Powers, Kerr, Tooze & Peterson, Portland, Ore., for defendant.

OPINION AND ORDER

KILKENNY, District Judge.

Again, this Court is faced with a construction of the Oregon long-arm statute.[1] The question is before the Court on the defendants' motion to quash the service of process.

London Shirt Co., Ltd., was incorporated in New York in 1953. It engaged in a jobbing business there for about five years, distributing shirts it bought from manufacturers to wholesalers, retailers and chain stores. It has been dormant since 1958 and, as of October, 1965, Robert C. Roggen was unaware whether it had been dissolved. R. C. Roggen Shirt Co. has been doing the same kind of business since 1952, though since 1964, it has been operated as a sole

1. ORS 14.035.

proprietorship by Roberta Roggen, with Robert C. Roggen as the manager of the business.

Calmark Shirt Corp., owned entirely by Mr. Roggen, was active in New York between 1953 and 1962. It has been dormant since then. It was engaged in purchasing fabric from textile manufacturers which it sent to independent contractors to be made into shirts. One of these contractors is Doyle Shirt Manufacturing Corp., which has done business in Tennessee since 1953, and of which Mr. Roggen is vice-president and secretary. Calmark sold Doyle-made shirts to one of the affiliated sales companies, London or R. C. Roggen. These transactions were of an internal nature, being handled by book entries rather than purchase orders and invoices.

Sales by London or R. C. Roggen were limited to retailers, wholesalers and chain stores in New York, Chicago, Pittsburgh, Detroit and Kansas City. There were a few sales by individuals, on a commission basis, to buyers in Puerto Rico, Chicago and Charlotte, North Carolina. There were, according to Robert Roggen's deposition, *no* sales by London or R. C. Roggen west of Kansas City, nor were there any chain stores to whom sales were made who had retail outlets west of Kansas City. Roggen says that, to the best of his knowledge, none of the defendants sold any of their products in the state of Oregon. None had employed commission men or agents in Oregon to solicit or receive orders in Oregon. None had ever sold shirts by mail in Oregon. To the best of Roggen's knowledge, none of the purchasing retailers, wholesalers or chain stores ever sold any London or Roggen shirts in Oregon.

William Henderson, however, the stepbrother of Charles David, Jr., states in his affidavit that during 1962 and the spring of 1963, he was a Marine stationed only in California. He says that he spent all of his leaves either in California or Oregon. During the 1962–63 Christmas holidays, he visited his mother and stepbrother in Oregon. He bought several gifts for them, including a white checked cotton sport shirt, labelled "London Wash-N-Wear." It is not disputed that this was a London Shirt Co. label. He does not recall exactly when he bought the shirt, or whether he bought it in California or Oregon.

Charles David, Jr., wore the shirt in Oregon several times after receiving it. On June 6, 1963, in Oregon, he reached across the top of the family stove to adjust an electric burner unit. The shirt came into casual contact with the unit, and burst into flames, injuring the boy severely.

The first two counts of the complaint on behalf of Charles David, Jr., seek damages for breach of warranty and for negligence in the manufacture of the shirt. In a separate cause, his parents, Charles and Beatrice David, rely on the same grounds to ask damages for the medical, hospital and related expenses incurred by them in the treatment of the boy's injuries, and to compensate them for the loss of his services and society.

Since the above facts are uncontradicted, they should be taken as true for the purposes of this motion. Shore v. Cornell-Dubilier Elec. Corp., 33 F.R.D. 5, 7 (D.Mass.1963).

## CONTENTIONS

Plaintiffs contend that both the statutory language and the constitutional "minimum contacts" requirement are satisfied by the showing that an injury occurred in Oregon and that it was connected with a product intended by its manufacturers and distributors for movement in the "regular course of commerce."

Defendants assert that the court has no jurisdiction over their persons, in that they did not purposely avail themselves of the commercial protection of any Oregon law and did not transact business either "in Oregon" or "with entities *known* to do business in Oregon." They also claim that the failure of the plaintiffs to establish that the shirt was purchased in Oregon deprives the record of proof of "minimum contacts" neces-

sary to support jurisdiction under the Oregon statute. Although, the facts in this case differ materially from those in any one of the cases recently decided by this Court,[2] and others, I believe the principles stated in Gray v. American Radiator & Standard Sanitary Corp., 22 Ill.2d 432, 176 N.E.2d 761 (1961), recognized and followed in this Court's previous decisions, are applicable to the facts in this case and that this Court has jurisdiction. In *Gray,* the Court found a sufficient purposeful indication of protection of the laws of Illinois in the mere distribution of the product likely to be *used*—not "purchased"—in Illinois. 176 N.E.2d 766. The defendants' argument might have some force if, in fact, the manufacturers, and their interrelated sales company, customarily restricted the retail sales of their products to certain regions. This, of course, is not the custom. They intend to accept the benefits of sales of their products at any place in the United States where purchases may be found. The wider the area, the greater the sales. Of particular significance, in my opinion, is Chief Judge Desmond's specially concurring opinion in Singer v. Walker, New York Court of Appeals, 15 N.Y.2d 443, 261 N.Y.S.2d 8, 209 N.E. 2d 68 (1965). The *Gray* case, so thoroughly analyzed by Judge Desmond, was decided long prior to the enactment of the Oregon long-arm statute. The Oregon legislation was patterned after the legislation which was under scrutiny in Gray. "The selection and enactment of a statute which has been judicially construed is an adoption of that construction, unless a contrary intent clearly appears." Hiersche v. Seamless Rubber Co., supra.

■ Be that as it may, I shall make another attempt to secure the view of the Oregon Supreme Court on this problem, which is a continuous source of litigation in this Court. Therefore, on the authority of Blair v. People of State

of California, 340 F.2d 741 (9th Cir. 1965); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25, 79 S.Ct. 1070, 3 L.Ed.2d 1058 (1959); United Gas Pipe Line Co. v. Ideal Cement Co., 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623 (1962), and Harman v. Forssenius, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965), the proceedings before me in this cause are stayed for a period of two weeks to afford the defendants an opportunity to apply to the Oregon courts for a determination of the legality of the service of process in this cause, under the Oregon Declaratory Judgments Act.[3] If defendants fail to seek such a determination in the Oregon courts within said period of time, plaintiffs should so advise the Court and I shall enter an order denying the motion to quash the service on said defendants. If, within said period of time, defendants institute the indicated proceeding and proceed to prosecute the same to a final conclusion, the action here pending will be stayed during that period of time.

Since it is my opinion that a judgment of a circuit court of the state of Oregon, although persuasive, would not be controlling, I feel that a decision should be obtained from the Supreme Court of that state.

For the convenience of counsel, and, in order to expedite the proceedings in the state court, all material filed in this Court in connection with the motion to quash, including the entire original file, if necessary, may be removed and temporarily used in the state court proceedings.

If the Oregon court prefers not to exercise its discretion and entertain jurisdiction under the indicated legislation, or otherwise, this fact may be brought to the attention of this Court by a proper showing, in which case, an order will be entered in conformity with the views previously expressed.

2. Hiersche v. Seamless Rubber Co., 225 F.Supp. 682 (D.Or.1963); Hicks v. Crane Co., 235 F.Supp. 609 (D.Or.1964); Ros-

enlund v. Transnational Ins. Co., 237 F. Supp. 599 (D.Or.1964).

3. ORS 28.010 et seq.