**OREGON FARM BUREAU INSURANCE COMPANY, Plaintiff,**

v.

**E. L. CALDWELL & SONS, INC., Defendant.**

**Civ. No. 68–388.**

United States District Court
D. Oregon.
Nov. 3, 1969.

**836**

Thomas Cavanaugh, Portland, Or., for plaintiff.

Kenneth E. Roberts, Mautz, Souther, Spaulding, Kinsey & Williamson, Portland, Or., for defendant.

## FINDINGS AND OPINION

KILKENNY, Circuit Judge:*

Plaintiff, an Oregon corporation, engaged in writing insurance, seeks indemnity from defendant in connection with a judgment paid by it as the insurer of Yuki and Robert Sumoge. Defendant is a Texas corporation with no principal place of business in Oregon. The matter in controversy exceeds $10,000.00, exclusive of interest and costs.

In April, 1964, defendant was engaged in the manufacture and sale of farm machinery, including, but not limited to, an item known as a Caldwell brush cutter. The item was manufactured by defendant and by it placed in channels of commerce for sale in the state of Oregon. The cutter was shipped by defendant and ultimately received by a distributor, Central Supply Company in Hood River, Oregon, and by it sold to the Sumoges for use in their fruit orchards. Prior to that date, plaintiff had issued to the Sumoges a farm comprehensive liability insurance policy with employers' liability coverage. About the same time, the Sumoges hired Nolan Richey as a ranch hand or "steady employee". Richey was injured in the course of his employment while operating the brush cutter. Subsequently, Richey prosecuted an action in this Court against the Sumoges and the defendant Caldwell. The action resulted in a final judgment being rendered against the Sumoges and in favor of Richey for the sum of $50,000.00. In December, 1967, the plaintiff, under the terms and conditions of its policy of insurance, paid and satisfied said judg-

---

* District Judge at time of submission, now sitting as District Judge by designation.

ment and court costs in the total amount of $50,184.18. It prosecutes this action against defendant on a theory of indemnity, as successor to the rights of the assureds, the Sumoges.

A more detailed statement of facts is set forth in my decision in Richey v. Sumoge, 273 F.Supp. 904 (D.Or.1967), on the motion for a new trial and for a judgment notwithstanding the verdict.

## JURISDICTION

■ A threshold question is this Court's jurisdiction under the Oregon Long-Arm Statute.[1] Defendant raised the identical point in the original action. The issue was resolved against him.[2] The general principles stated in *Richey* have since been approved by the Oregon Supreme Court in State ex rel. Western Seed Production Corp. v. Campbell, 250 Or. 262, 442 P.2d 215 (1968), cert. denied 393 U.S. 1093, 89 S.Ct. 862, 21 L.Ed. 2d 784.

Although this is an indemnity action rather than one for personal injuries, as embraced in *Richey*, I find no valid reason for distinguishing between the two. Plaintiff stands in the Sumoges' shoes. Richey secured jurisdiction by reason of the delivery of the defective machine to the Sumoges. The tortious acts of the defendant were the cause of the personal injuries received by Richey. Even though the present action might be viewed as one for property damage, rather than for personal injuries, the defendant cannot escape the reach of the long-arm statute. *Western Seed* avoided a decision on whether the doctrine of strict liability should be imposed upon remote sellers of products which cause property damage, as distinguished from personal injury. It was there stated

that the application of Restatement (Second) of Torts § 402A (1965) to property damage remained an open question in that state. Section 402A,[3] insofar as it pertains to personal injuries, has been approved by the Oregon Supreme Court. State ex rel. Western Seed Production Corp. v. Campbell, supra; Wights v. Staff Jennings, Inc., 241 Or. 301, 405 P. 2d 624 (1965); Heaton v. Ford Motor Co., 248 Or. 467, 435 P.2d 806 (1967). It would be folly for the Oregon court to approve the legislation in its application to personal injuries and reject it as to property damage. The Oregon court, as I have known it for close to 45 years, is not noted for, or subject to, such a judicial infidelity. The result I reach was forecast by the criticism of Brewer v. Reliable Automotive Co., 240 Cal.App.2d 173, 49 Cal.Rptr. 498 (1966), in Arrow Transportation Co. v. Fruehauf Corp., 289 F.Supp. 170 (D.Or. 1968), in which acceptance was given to the opposite view, expressed in Rosenau v. City of New Brunswick, 51 N.J. 130, 238 A.2d 169 (1968). In the latter, the New Jersey Supreme Court applied the doctrine of strict liability in a property damage action. We are not here concerned with an action for loss of profits or economic loss, as distinguished from property damage, the former being before the court in Price v. Gatlin, 241 Or. 315, 405 P.2d 502 (1965), and *Western Seed, supra.* Moreover, as in *Western Seed,* the plaintiff charges the defendant with acts of negligence proximately causing Richey's injuries. Richey made similar charges against the Sumoges and defendant in the original action. Further discussion of the subject is unwarranted. Defendant's jurisdictional challenge is without substance.

---

1. ORS 14.035.

2. Richey v. Sumoge, 257 F.Supp. 32 (D. Or.1966).

3. "(1) One who sells any product in a defective condition unreasonably dangerous to the user or consumer *or to his property* is subject to liability for physical harm

thereby caused to the ultimate user or consumer, or to his property, if

(a) The seller is engaged in the business of selling such a product, and

(b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold." (Emphasis supplied.)

\* \* \* \* \*

## MERITS

■ Plaintiff charges that the brush cutter designed, manufactured and sold by the defendant was an unreasonably dangerous machine, was extra-hazardous and, consequently, the doctrine of strict liability should be applied. Strict liability, as I understand the doctrine, does not mean absolute liability. While the former means liability without negligence, it does not mean liability without some type of fault. It does not make a retailer, a distributor or a manufacturer an insurer of the safety of the ultimate user. There must be such a defect in the product as to render it unreasonably dangerous to the user. Of course, such defect must have existed at the time the product was last in the control of the person charged with liability.

Moreover, plaintiff charges that defendant was negligent in the design, manufacture and sale of the machine in the following particulars:

(a) In manufacturing, designing and placing on the market the afore-described brush cutter without a guard around the universal joint and drive shaft.

(b) In failing to notify or warn prospective buyers, including the plaintiff's assureds, that a guard to cover the universal joint and drive shaft was available for purchase, and to warn such purchasers of the danger inherent in operating said machine without any guards thereon.

(c) In failing to design and manufacture a guard which would have provided positive guarding and prohibited access to the universal joint and drive shaft.

Defendant contends that Richey's injuries were caused by his own negligence and the negligence of the Sumoges.

■ I have no difficulty in finding that Caldwell manufactured the product and placed it in commerce with the expectation that it would eventually reach a user or consumer, such as the Sumoges. Moreover, the cutter was placed in commerce for ultimate use without a guard around the drive shaft shear pin, which caught and injured Richey, nor did it warn prospective purchasers of the cutters that a guard was available. There is no question in my mind but that the cutter, when it left the control of the defendant and when it was placed in the possession of the Sumoges, was unreasonably dangerous and ultra-hazardous within the meaning of Restatement (Second) of Torts § 402A, as construed in Wights v. Staff Jennings, *supra*; Heaton v. Ford Motor Co., *supra*; and State ex rel. Western Seed Production Corp. v. Campbell, *supra*. Therefore, the doctrine of strict liability should apply.

■ Additionally, and without going into detail on the facts, which are fully stated in Richey v. Sumoge, *supra*,[3A] the evidence supports findings that the defendant was negligent in the design, manufacture and the sale of the cutter in each of the respects as charged by plaintiff and that the unreasonably dangerous and defective condition of the machine and the specifications of negligence as mentioned was each a proximate cause of the accident and resulting injuries to Richey. I so find.

On the other hand, the evidence clearly shows that the Sumoges, the plaintiff's assureds, had operated power equipment for years and were familiar with the dangers attendant on the use of an open joint, such as caused plaintiff's injuries. They knew that a guard could be obtained and would protect workmen engaged in duties around the joint. More than that, they knew that the power take-off mechanism was defective. On previous occasions, the shaft started spinning without any positive action on Richey's part. He reported this defect to the Sumoges. They did nothing about it. I need not decide whether Richey was also negli-

gent. If necessary, I would find that his actions, if any, did not proximately contribute to his injuries. The negligence of the Sumoges, on the other hand, did proximately contribute to Richey's injuries.

■ Ordinary contributory negligence is not a defense to the count on strict liability. Whether we term the actions of the Sumoges as contributory negligence or assumption of risk, I find that they had a clear knowledge of the potential danger, but, nevertheless, proceeded to unreasonably make use of the cutter. Restatement (Second) of Torts § 402A, comment n, is here of significance.[4] It is clear that the Sumoges permitted their employee to voluntarily and unreasonably encounter a known danger. They had discovered the defect and were well aware of the danger, but, nevertheless, proceeded unreasonably to make use of the product, as a result of which Richey was injured. Sweeney v. Matthews, 94 Ill.App.2d 6, 236 N.E.2d 439, 446 (1968) is instructive.

■■ The common law rule permitting a passive tort-feasor to bring an action to recover indemnity from an active tort-feasor has no application to a controversy where both parties are active tort-feasors. Unitec Corp. v. Beatty Safway Scaffold Co. of Oregon, 358 F.2d 470 (9th Cir. 1966). The rule in City of Astoria v. Astoria & Columbia River R. Co., 67 Or. 538, 136 P. 645, 49 L.R.A.,N.S., 404 (1913), is of no assistance to plaintiff. The Sumoges, the predecessors in interest of the plaintiff, were, in fact, active tort-feasors. Plaintiff occupies the same status and cannot recover. Even the maritime indemnity doctrine taught by Ryan Stevedoring Co., Inc. v. Pan-Atlantic S. S. Corp., 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), and its descendants, including Italia Societa, etc. v. Oregon

Stevedoring Co., 376 U.S. 315, 84 S.Ct. 748, 11 L.Ed.2d 732 (1964), would not permit a recovery by plaintiff.

This opinion shall serve as my findings and conclusions.

---

4. "On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery."