Antonio A. ANDRADE, Plaintiff-Appellant,

v.

CITY OF PHOENIX and Lawrence Wetzel, Defendants-Appellees.

Clifford D. FUGATE and Robert Dennis Barnhart, Plaintiffs-Appellants,

v.

PHOENIX CIVIL SERVICE BOARD, et al., Defendants-Appellees.

Nos. 80–5426, 81–5150.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Nov. 12, 1981.

Decided Oct. 12, 1982.

---

558

Robert R. Clarke, Napier & Jones, Phoenix, Ariz., for plaintiffs-appellants.

William R. Jones, Jr., Jones, Teilborg, Sanders, Haga & Parks, Phoenix, Ariz., argued, for defendants-appellees; Don C. Stevens, II, Jones, Teilborg, Sanders, Haga & Parks, Phoenix, Ariz., on brief.

Appeal from the United States District Court for the District of Arizona.

Before BAZELON,* WALLACE, and NELSON, Circuit Judges.

\* Honorable David L. Bazelon, Senior United States Circuit Judge, District of Columbia Circuit, sitting by designation.

PER CURIAM:

Police officers Andrade, Fugate and Barnhart were suspended by the Phoenix police department (the department) for engaging in sexual relations with women who were not their wives. Disciplinary action against Andrade was based upon charges of commission of a crime and immorality, both of which designated adultery as the underlying offensive conduct. Fugate and Barnhart were charged, in addition, with neglect of duty and conduct unbecoming an officer or which tends to bring discredit upon the department. The crime and immorality charges against Fugate designated adultery as the underlying offensive conduct. The crime and the immorality charges against Barnhart designated lewd and lascivious acts in addition to adultery as the underlying offensive conduct.

Andrade's twenty-day suspension without pay was upheld by the Phoenix Civil Service Board (the civil service board). Fugate and Barnhart were dismissed by the department. The civil service board reinstated them, but let stand suspensions of sixty-eight and sixty-one days respectively. All three officers filed complaints in the district court arguing that their suspensions violated their constitutional rights. The district court dismissed all three complaints, granting summary judgment in favor of the City of Phoenix (the city), the civil service board, and the chief of police. The officers appeal from these judgments, and their appeals have been consolidated for decision.

These appeals present several questions: whether the officers committed the crime of adultery as it is defined by Arizona law; if not, whether the police department and the civil service board would have imposed any disciplinary sanctions upon the officers absent a mistaken belief that their conduct constituted a crime; and whether discipline for extramarital sexual behavior, whether criminal or not, is constitutionally permissible.

In disciplinary proceedings within the department and before the civil service commission, the officers were charged with violation of departmental rules prohibiting the commission of a crime. Andrade and Fugate were charged with adultery in violation of Ariz.Rev.Stat. §§ 13–1408 and 13–221 (current version at § 13–1408 (1978)); Barnhart was charged with adultery in violation of *id.* § 13–221 (current version at § 13–1408 (1978)), and with the commission of lewd and lascivious acts, in violation of *id.* § 13–652 (current version at § 13–1412 (1978)).

█ We find no constitutional infirmity in a disciplinary rule prohibiting the commission of crimes by police officers. It seems clear that criminal activity by an officer charged with enforcement of the law will diminish his respect in the eyes of the community, arouse cynicism, discourage public cooperation, and perhaps encourage crime by others. Furthermore, a policeman who commits a crime places himself in a position where his interests as an individual and his interests as an officer may conflict. We therefore conclude that a rule prohibiting the commission of a crime has a rational basis.

There is a question, however, whether the officers have committed the crime of adultery as it is defined under Arizona law. The Arizona statute criminalizing adultery provides:

A. A married person who has sexual intercourse with another than his or her spouse, and an unmarried person who has sexual intercourse with a married person not his or her spouse, commits adultery and is guilty of a class 3 misdemeanor. When the act is committed between parties only one of whom is married, both shall be punished.

B. No prosecution for adultery shall be commenced except upon the complaint of the husband or wife.

Ariz.Rev.Stat. § 13–1408.[1] The officers have not denied their participation in extramarital sexual relations. At first blush, it would appear that they have committed the crime of adultery. It is not clear, however, whether the provision regulating the prosecution of adultery (part B) is merely a procedural mandate, or whether it modifies the definition of the crime, making adultery a crime only when a spousal complaint has been made. We have found only one case interpreting the statute. *State v. Lynch,* 115 Ariz. 19, 562 P.2d 1386 (Ct.App.1977). That decision, rendered by an intermediate appellate court in Arizona, holds that the prosecution provision modifies the definition of the crime. *Id.* at 24, 562 P.2d at 1391.

█ The courts of a state alone can define the authoritative meaning of state law. *See, e.g., United Gas Pipe Line Co. v. Ideal Cement Co.,* 369 U.S. 134, 135, 82 S.Ct. 676, 677, 7 L.Ed.2d 623 (1962) (per curiam). If there were a decision by the Supreme Court of Arizona construing this statute, the federal courts would be bound by that decision. *Gurley v. Rhoden,* 421 U.S. 200, 208, 95 S.Ct. 1605, 1610, 44 L.Ed.2d 110 (1975). In the absence of a pronouncement by the highest court of a state, the federal courts must follow the decisions of the intermediate appellate courts of the state unless there is " 'convincing evidence that the highest court of the state would decide differently.' " *Community National Bank v. Fidelity & Deposit Co.,* 563 F.2d 1319, 1321 n.1 (9th Cir. 1977), *quoting Klingebiel v. Lockheed Aircraft Corp.,* 494 F.2d 345, 346 n.2 (9th Cir. 1974). *See West v. American Telephone and Telegraph Co.,* 311 U.S. 223, 237, 61 S.Ct. 179, 183, 85 L.Ed. 139 (1940), cited in *Commissioner v. Estate of Bosch,* 387 U.S. 456, 465, 87 S.Ct. 1776, 1782, 18 L.Ed.2d 886 (1967). Because the district court did not address this issue, we cannot determine whether there is evidence that the Arizona Supreme Court would decide this issue differently than the court in *Lynch* ; we therefore remand to the district court to determine how the Arizona Supreme Court would interpret the statute. If the crime of adultery requires only the

---

1. Some of the acts for which the policemen were disciplined occurred under an earlier version of the law which provided for punishment by imprisonment for not more than three years.

act of extramarital sexual relations, the three officers were disciplined for conduct which is criminal under Arizona law. If, however, a spousal complaint is an indispensable element of the crime itself, discipline of Fugate and Barnhart for the commission of a crime would be improper. A complaint against Andrade was made to the department by an unidentified woman who turned out to be his wife. Whether Andrade committed the crime on the basis of that complaint is also a question of Arizona law which we remand for consideration by the district court.

Should the district court find that the officers have committed the crime of adultery as it is defined by Arizona law, the decision of the civil service board must be upheld if discipline is constitutionally permissible. If, on the other hand, the district court should determine that the officers have not committed the crime of adultery as it is defined by Arizona law, the first charge against Andrade and Fugate cannot support the disciplinary action. It does not inexorably follow that the imposition of discipline is itself contrary to law. However, it is unclear whether the charges against the officers were deemed by the agency and the civil service commission to constitute separate or cumulative grounds for discipline. If the officers have been charged erroneously with the commission of a crime, we cannot treat the error as harmless since we do not know that a finding on the other charges alone would have resulted in the same or any discipline. *Meehan v. Macy,* 392 F.2d 822, 839 (D.C.Cir.1968), *aff'd on rehearing en banc,* 425 F.2d 472 (D.C.Cir. 1969) (per curiam).

The same difficulty exists with respect to Officer Barnhart. Even though he is charged with a second crime, *i.e.,* the commission of lewd and lascivious acts, it is not clear that the department and the civil service commission would have imposed the same or any discipline had they not deter-

mined that he had committed the crime of adultery.

Therefore, if, on remand, the district judge decides that the officers have not committed the crime of adultery, he should frame an order retaining jurisdiction pending a determination of that question by the department and the civil service board. *See Railroad Commission v. Pullman Co.,* 312 U.S. 496, 502, 61 S.Ct. 643, 646, 85 L.Ed. 971 (1941) (jurisdiction retained pending state court proceedings). If the department and the civil service board fail to act within a reasonable time, the district judge should proceed as he deems appropriate.

We do not reach the difficult question whether discipline for extramarital sexual activity is constitutionally permissible because it is uncertain that discipline will be imposed. If, on remand, the district judge determines that the officers have committed the crime of adultery or if, despite a contrary determination, the department and the civil service board nevertheless impose the same or some modified form of discipline based on the other charges, that question may again be raised.

AFFIRMED IN PART, VACATED AND REMANDED.

BAZELON, Senior Circuit Judge, concurring in part and dissenting in part:

I agree that we should remand these section 1983 actions to the district court to determine whether the police officers' conduct violated Arizona law. I also agree that, because resolution of this question could dispose of the cases, we should not reach "the difficult question whether discipline for extramarital sexual activity is constitutionally permissible."[1] I write separately because I do not agree that the district court should "remand" the cases to the appellees if it finds that the officers did not commit crimes.

1. At 560. Because we do not reach this question, I can find no purpose for the court's extensive dicta concerning the rationality of "a rule prohibiting the commission of a crime" by a police officer. *Id.,* at 559. We have not determined whether punishment of police officers for extramarital sexual activity has a rational basis, let alone whether rationality review is the proper standard of scrutiny.

## A. *The Proper Procedure on Remand*

The court today instructs that "if, on remand, the district judge decides that the officers have not committed the crime of adultery, he should frame an order retaining jurisdiction pending a determination . . . *by the [police] department and the civil service board*" whether the officers would have been disciplined anyway. At 560 (emphasis added). It is well established, however, that the district court, and not the defendant agencies, must determine whether the officers would have been disciplined. The Supreme Court has repeatedly instructed that where a plaintiff demonstrates that an impermissible ground was a "substantial factor" in a state or local agency's challenged action, the agency bears the burden of persuading the district court that it would have taken the action even had it not considered the impermissible ground.

For example, in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977), the Court reviewed the refusal of a school board to renew a teacher's contract. There, as here, the local agency asserted that its decision rested on a number of separate grounds. *Id.* at 282–83 & n.1, 97 S.Ct. at 573–574 & n.1. There, as here, the plaintiff claimed that the agency's action violated his constitutional rights. *Id.* at 276, 97 S.Ct. at 570. Upholding the district court's determination that one of the agency's grounds was impermissible and was a "substantial factor" in the decision not to renew the teacher's contract,[2] a unanimous Supreme Court outlined the proper next step: "[T]he District Court should [go] on to determine whether the Board ha[s] shown by a preponderance of the evidence that it would have reached the same decision . . . even in the absence of the protected conduct." *Id.* at 287, 97 S.Ct. at 576. This unambiguous burden-shifting procedure has repeatedly been followed by the Supreme Court[3] and by the lower federal courts.[4]

Judge Wallace believes that the *Mt. Healthy* procedure is appropriate only if a "constitutional right" is at stake. Concurring op. at 563. He argues at some length that adultery is not "constitutionally protected" conduct and that, because the officers committed adultery, they are not entitled to a *Mt. Healthy* hearing. *Id.,* at 563–565. I respectfully submit that this reasoning totally misconceives the question before us. The *Mt. Healthy* issue will arise only if the district court finds that the officers *did not commit adultery as defined by Arizona law.* If the district court so finds, it would be illogical and unjust to deny the officers a *Mt. Healthy* hearing on the rationale that adultery is not a "constitutionally protected" activity. Either the officers committed adultery as defined by Arizona law or they did not. If they did not, the constitutional basis of their right to a *Mt. Healthy* determination is manifest: obviously, due process protects against punishment for crimes not committed.

This court's approach is palpably inconsistent with *Mt. Healthy* and its progeny. I believe that it confuses the fact-finding role of federal courts when reviewing the constitutionality of state action with their responsibilities when overseeing federal administrative action.[5] Due regard for principles

---

2. The teacher had informed a local radio station of a proposed faculty dress code, and the superintendent of schools cited this incident as indicative of "a notable lack of tact in handling professional matters." 429 U.S. at 282, 283 n.1, 97 S.Ct. at 573, 574 n.1. The Supreme Court affirmed the district court's finding that the teacher's action was protected by the First Amendment. *Id.* at 284, 97 S.Ct. at 574.

3. *See Branti v. Finkel,* 445 U.S. 507, 512 n.6, 100 S.Ct. 1287, 1291 n.6, 63 L.Ed.2d 574 (1980); *Columbus Bd. of Educ. v. Penick,* 443 U.S. 449, 465 n.13, 99 S.Ct. 2941, 2950 n.13, 61 L.Ed.2d 666 (1979); *Givhan v. Western Line Consol.*

*School Dist.,* 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); *Arlington Heights v. Metropolitan Housing Dev. Corp.,* 429 U.S. 252, 270–71 n.21, 97 S.Ct. 555, 566–567 n.21, 50 L.Ed.2d 450 (1977).

4. *See Brown v. Bullard Indep. School Dist.,* 640 F.2d 651, 653–54 (5th Cir. 1981), *reh'g denied, id.* at 651, *cert. denied,* 454 U.S. 828, 102 S.Ct. 120, 70 L.Ed.2d 103 (1981); *McGill v. Board of Educ.,* 602 F.2d 774 (7th Cir. 1979).

5. In light of the special, hierarchical relationship between the federal courts and federal agencies, the course adopted in *Meehan v.*

of federalism—particularly the absence of a hierarchical relationship between the federal courts and state agencies—requires that we follow the course outlined in *Mt. Healthy:* if the district court finds that the officers did not violate Arizona's law against adultery, the *court* must determine whether the police department would have disciplined the officers notwithstanding the mistaken belief that the officers had committed crimes.[6]

## B. *The Proper Evidentiary Test on Remand*

Because the court mistakenly focuses on a "remand" to the local agencies, it fails to outline adequately the evidentiary standard that the district court should apply. The standard is an exacting one. The appellees must prove (1) by a "preponderance of the evidence" that (2) they "*would have reached the same decision*" in the absence of considering the impermissible ground.[7] The test is not whether other grounds support the disciplinary action, but whether other grounds, standing by themselves, *in fact* would have led to the disciplinary action. As the Supreme Court has repeatedly

made clear, property deprivations fatally tainted by an impermissible consideration cannot be sustained merely by the presence of other, valid bases of decision.[8] If the officers did not commit crimes and if, possessed of that knowledge, the department would not have suspended them, *no* penalty can constitutionally be sustained.[9]

WALLACE, Circuit Judge, concurring:

In his opinion concurring in the result, Judge Bazelon states that should the district court conclude that the conduct of the police officers did not constitute a crime under Arizona law, we are obligated to follow the procedural requirements of *Mt. Healthy v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (*Mt. Healthy*). I write only to state why I disagree with Judge Bazelon and why I conclude that the *Mt. Healthy* standards are neither necessary nor appropriate in this case.

In *Mt.. Healthy,* Doyle, an untenured teacher, was denied reemployment following his involvement in several incidents of concern to the school board: he argued with school cafeteria workers over the amount of food he was served, referred to students in

---

Macy, 392 F.2d 822, 829 (D.C.Cir.1968), aff'd on reh'g en banc, 425 F.2d 472 (D.C.Cir.1969) (per curiam), was a legitimate exercise of supervisory power. *See S.E.C. v. Chenery Corp.,* 332 U.S. 194, 196–97, 67 S.Ct. 1575, 1577–1578, 91 L.Ed. 1995 (1947), and 318 U.S. 80, 87, 94, 63 S.Ct. 454, 459, 462, 87 L.Ed. 626 (1943).

6. The court offers no explanation for its reliance on the *Pullman* abstention doctrine. At 560. That "extraordinary and narrow exception," *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188–89, 79 S.Ct. 1060, 1062–1063, 3 L.Ed.2d 1163 (1959), allows a federal court to abstain from deciding novel issues of state law to permit for their "definitive" resolution by state courts, *Railroad Comm. v. Pullman Co.,* 312 U.S. 496, 501, 61 S.Ct. 643, 645, 85 L.Ed. 971 (1941). *See generally Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813–17, 96 S.Ct. 1236, 1244–1246, 47 L.Ed.2d 483 (1976). In the present case, however, if it is found that the officers did not violate state law, a determination of whether the agencies would have disciplined them anyway is a straightforward factual question that, as *Mt. Healthy* makes clear, is properly resolved by the district court. *See supra* notes 2–4 and accompanying text.

7. *Givhan v. Western Line Consol. School Dist.,* 439 U.S. 410, 416, 99 S.Ct. 693, 697, 58 L.Ed.2d 619 (1979); *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977) (emphasis added).

8. *See, e.g., Givhan v. Western Line Consol. School Dist.,* 439 U.S. at 416–17, 99 S.Ct. at 697–698; *Mt. Healthy City Bd. of Educ. v. Doyle,* 429 U.S. at 287, 97 S.Ct. at 576.

9. It should be noted that the appellees have insisted before this court that illegal conduct was the gravamen of the suspension orders. The Arizona authorities emphasized in both of their briefs that the policemen's "activities, *apart from their illegal nature,* were [not] the 'substantial' or 'motivating' factors in the suspension imposed. It is undisputed that it was Appellants' illegal activities, contrary to Arizona law, which were the substantial, motivating and specified factor in their suspension ...." Brief for Appellees in No. 81–5150, at 34 (emphasis added). *See also* Brief for Appellees in No. 80–5426, at 26.

a complaint with coarse language, used an obscene gesture in disciplining students, and called a radio station about a teacher dress code policy. The district court held that Doyle's radio station call was constitutionally protected and ordered his reinstatement. The Supreme Court held that this reasoning was inadequate. The Court stated that "[a] rule of causation which focuses solely on whether protected conduct played a part, 'substantial' or otherwise, in a decision not to rehire, could place an employee in a better position as a result of the exercise of *constitutionally protected conduct* than he would have occupied had he done nothing." *Id.* at 285, 97 S.Ct. at 575 (emphasis added). The Court held that such an inflexible rule was unnecessary. "The constitutional principle at stake is sufficiently vindicated if such an employee is placed in no worse a position than if he had not engaged in the conduct." *Id.* at 285–86, 97 S.Ct. at 575–576. The Court then held that once Doyle had shown that his "protected conduct" played a substantial part in the board's decision not to rehire him, the burden shifted to the board to show by a preponderance of the evidence that it would have reached the same decision absent its consideration of Doyle's protected conduct.

The element which triggers the *Mt. Healthy* approach is the implication of a constitutional right. In this case, the police department and the civil service board sanctions were imposed because of the officers' extramarital sexual conduct. I conclude that because such conduct, unlike the exercise of free speech involved in *Mt. Healthy,* has never been held constitutionally protected by the Supreme Court or by this court, and because I cannot assume that such conduct will be held constitutionally protected, the *Mt. Healthy* standards would be inappropriate and that the *per curiam* properly states sufficient instructions for the district court.

No Supreme Court case has held that married persons have a constitutional right to engage in adultery. There is some language in the contraception cases which might be interpreted to protect the individual's right to engage in sexual relations, within or without marriage. *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), referred to the individual's right to decide "whether to bear or beget a child," *id.* at 453, 92 S.Ct. at 1038, and *Carey v. Population Services International,* 431 U.S. 678, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977), referred to "individual decisions in matters of childbearing." *Id.* at 687, 97 S.Ct. at 2017. While some might conclude that the right to make those decisions necessarily encompasses the right to engage in sexual relations, within or outside of marriage, I believe this conclusion is not supported by the Court's analysis in these cases and would be inconsistent with the clear import of the Court's cautionary language.

In *Eisenstadt v. Baird,* the Court's holding that Massachusetts had violated the equal protection clause by denying single persons the same access to contraceptives afforded to married persons relied on the Court's preliminary conclusion "that the deterrence of premarital sex [could not] reasonably be regarded as the purpose of the Massachusetts law." 405 U.S. at 448, 92 S.Ct. at 1035. The Court reasoned that it would be "plainly unreasonable to assume that Massachusetts [had] prescribed pregnancy and the birth of an unwanted child as punishment for fornication." *Id.* In *Carey v. Population Services International,* the plurality stated, "We observe that the Court has not definitively answered the difficult question whether and to what extent the Constitution prohibits state statutes regulating [private consensual sexual] behavior among adults." 431 U.S. at 694 n.17, 97 S.Ct. at 2021 n.17 (plurality opinion). Justice White, concurring, wrote of the *Carey* decision, "I do not regard the opinion, however, as declaring unconstitutional any state law forbidding extramarital sexual relations." *Id.* at 702, 97 S.Ct. at 2025. *See also id.* at 705, 97 S.Ct. at 2026 (Powell, J., concurring). Justice Rehnquist, dissenting, stressed that the Court had upheld at least one state statute regulating adult, consensual sexual behavior: "While we have not ruled on every conceivable regulation af-

fecting such conduct the facial constitutional validity of criminal statutes prohibiting certain consensual acts has been 'definitively' established." *Id.* at 718 n.2, 97 S.Ct. at 2033 n.2, *citing Doe v. Commonwealth's Attorney for Richmond,* 425 U.S. 901, 96 S.Ct. 1489, 47 L.Ed.2d 751 (1976) (summary affirmance of a decision upholding sodomy laws).

I cannot conclude from these cases that the Constitution protects extramarital sexual relations. The language in *Eisenstadt v. Baird* referring to the individual's right to decide "whether to bear or beget a child" suggests that the right of privacy comprehends the right of individuals, only after they have decided to engage in sexual relations, to determine whether they will or will not engender life. *Eisenstadt* forbids a state from forcing those who engage in sexual relations to bear a child "as punishment for fornication." 405 U.S. at 448, 92 S.Ct. at 1035. In *Carey v. Population Services International,* the Court emphasized that the right of privacy does not constitutionalize the so-called "sexual revolution": "[W]e do not hold that state regulation must meet [the compelling interest] standard 'whenever it implicates sexual freedom' ... or 'affect[s] adult sexual relations,' ... but only when it 'burden[s] an individual's right to decide to prevent conception or terminate pregnancy by substantially limiting access to the means of effectuating that decision.'" 431 U.S. at 688 n.5, 97 S.Ct. at 2018 n.5. The language in *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), also indicates the narrow boundaries of the right. There the Court stated, "[I]t is not clear to us that the claim asserted by some *amici* that one has an unlimited right to do with one's body as one pleases bears a close relationship to the right of privacy previously articulated in the Court's decisions." *Id.* at 154, 93 S.Ct. at 727. The Court then "conclude[d] that the right of personal privacy includes the abortion decision, but that this right is not unqualified and must be considered against important state interests in regulation." *Id.*

Nor do I believe that we can properly assume that the Supreme Court will hold that the rights of privacy which the Constitution affords to individuals outside the marriage and family contexts should be the same as the rights accorded to individuals within those contexts. Many of the Supreme Court's decisions implicating the right of privacy arose in the context of husband-wife and parent-child relationships. *See Griswold v. Connecticut,* 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965); *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923); and *Pierce v. Society of Sisters,* 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925). In *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), which invalidated legislation mandating the sterilization of habitual criminals, the Court held that the right to procreate was "a basic civil right[ ]." *Id.* at 541, 62 S.Ct. at 1113. The Court undeniably implied that the right to procreate existed in the marriage context: "We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race." *Id.* See also *Zablocki v. Redhail,* 434 U.S. 374, 386, 98 S.Ct. 673, 681, 54 L.Ed.2d 618 (1978) ("if appellee's right to procreate means anything at all, it must imply some right to enter [into marriage,] the only relationship in which the State of Wisconsin allows sexual relations legally to take place") (footnote omitted).

The Supreme Court has indicated that privacy rights outside of marriage and the family are not coextensive with privacy rights within marriage and the family. Comparison of *Village of Belle Terre v. Boraas,* 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974), with *Moore v. City of East Cleveland,* 431 U.S. 494, 97 S.Ct. 1932, 52 L.Ed.2d 531 (1977), provides one clear illustration. In *Village of Belle Terre,* which upheld a municipal zoning regulation prohibiting groups of more than two unrelated persons from occupying a residence, the Court concluded that no right of privacy was involved. 416 U.S. at 7–8, 94 S.Ct. at 1540–1541. That holding is especially sig-

nificant when viewed in light of the rejected position of the dissent. The dissent argued that the ordinance discriminated on the basis of a "personal lifestyle choice" and abridged the constitutionally guaranteed right of privacy: "The choice of household companions—of whether a person's 'intellectual and emotional needs' are best met by living with family, friends, professional associates, or others—involves deeply personal considerations as to the kind and quality of intimate relationships within the home." *Id.* at 16, 94 S.Ct. at 1544 (Marshall, J., dissenting). The import of the Court's holding is further illuminated by comparison with *Moore v. City of East Cleveland,* in which the Court invalidated a zoning ordinance prohibiting certain three-generation living arrangements. The Court summarily distinguished *Village of Belle Terre*: "But one overriding factor sets this case apart from *Belle Terre.* The ordinance there affected only *unrelated* individuals." *Moore v. City of East Cleveland, supra,* 431 U.S. at 498, 97 S.Ct. at 1934 (plurality opinion) (emphasis in original).

Only discipline based upon adultery is argued to be a constitutional violation. Because neither the Supreme Court nor this court has held—and because we do not now hold and cannot rationally assume the Court will hold—that extramarital sexual relations are constitutionally protected, it would be inappropriate for us to impose the *Mt. Healthy* standard, which is based on an accepted constitutional violation. Were we to do so, we would, in effect, prejudge the question we specifically do not reach.

Finally, I would not apply the *Mt. Healthy* requirements in the absence of constitutionally impermissible motives. There are certain costs associated with imposition of the *Mt. Healthy* requirements. Once an agency has imposed sanctions, based in part upon constitutionally protected conduct, the agency must show by a preponderance of the evidence that it would have taken the same action had it not considered the constitutionally protected conduct. This means that in some cases, while the agency would have taken the same action, it may not be able to demonstrate that it would have done

so. Under these circumstances, for example, a school board might be precluded from refusing to rehire an incompetent teacher, not because it would not have reached that decision without resort to impermissible considerations, but because it cannot meet its burden of proof. Nevertheless, the Supreme Court has determined, and I agree, that these costs are justifiable where the procedures are necessary to vindicate the exercise of constitutional rights. It should go without saying that where there has been no penalty on the exercise of a constitutional right, these costs are not justifiable. Thus, unless a constitutional right is implicated, the *Mt. Healthy* standard is inappropriate.