The **WACKENHUT CORPORATION,** Marvil International Security Services, Inc., and Robert S. Hopler, Plaintiffs,

v.

The Hon. Salvador Rodriguez APONTE, Superintendent of Police, the Hon. Rafael Hernandez Colon, Secretary of Justice and the Hon. Roberto Sanchez Vilella, Governor of the Commonwealth of Puerto Rico.

Civ. No. 395–65.

United States District Court D. Puerto Rico.

June 23, 1966.

**402**

------♦------

McConnell, Valdés & Kelley, San Juan,
P. R., for plaintiffs, Wackenhut Corp.
and Robert S. Hopler.

Parke, Graves & Rodríguez-Maduro,
Santurce, P. R., for plaintiff, Marvil In-
ternational Securities Services, Inc.

González Jr., González-Oliver & Novak,
Santurce, P. R., for plaintiff, Caribbean
Refining Co.

Rafael Hernández Colón and Rafael
A. Rivera-Cruz, Dept. of Justice, San
Juan, P. R., for defendants.

Before MARIS and McENTEE, Cir-
cuit Judges, and RUIZ-NAZARIO, Dis-
trict Judge.

## OPINION OF THE COURT

MARIS, Circuit Judge.

The plaintiffs in this case seek an in-
junction restraining the enforcement
against them of the Private Detectives
Act of Puerto Rico approved June 29,
1965, No. 108, 25 L.P.R.A. § 285 et seq.
Upon their application a district judge
then temporarily presiding by assign-
ment in this court issued a temporary re-
straining order on September 16, 1965.
Upon the application of the plaintiffs the
Chief Judge of the First Circuit on Janu-
ary 13, 1966 constituted the present dis-
trict court of three judges to hear and de-
termine the plaintiffs' application for an
interlocutory and permanent injunction.
Hearings were held on February 8, Feb-
ruary 11 and April 27, 1966.

The Wackenhut Corporation, one of
the plaintiffs, is a Florida corporation
authorized to do business in Puerto Rico.

Marvil International Security Services,
Inc., another of the plaintiffs, is a corpo-
ration of Puerto Rico, and Robert S.
Hopler, the third plaintiff, is a resident
of Puerto Rico and district manager in
Puerto Rico of The Wackenhut Corpora-
tion. Both Wackenhut and Marvil are
engaged in the business as independent
contractors of providing guards and
watchman services for industrial con-
cerns. They allege that the Private De-
tectives Act of Puerto Rico deprives them
of liberty, property and livelihood with-
out due process of law in violation of the
Constitution of the United States in that

"(a) It unreasonably, arbitrarily
and capriciously prohibits them from
rendering the same services which it
is permissible for persons in their in-
dividual capacity to render.

"(b) It unreasonably, arbitrarily
and capriciously includes guards and
watchmen employed by agencies pro-
viding guard and watchman services to
the general public in the definition of
'private detectives'.

"(c) It unreasonably, arbitrarily
and capriciously prohibits said plain-
tiffs from rendering guard and watch-
man services during the course of con-
flicts among workers, or between work-
ers and employers, or in cases in which
petitions for union elections have been
filed, whereas said plaintiffs would
not be so prohibited were they render-
ing said services in their individual
capacity.

"(d) It unreasonably, arbitrarily
and capriciously prohibits plaintiff
Marvil from using trained dogs in
rendering guard and watchman serv-
ices, whereas an individual rendering
said services with trained dogs would
not be so prohibited."

Section 3 of the Private Detectives Act
which became effective July 1, 1965,
makes it illegal to engage in the private
detective business without first having
obtained a license from the Superin-
tendent of Police. Section 2 defines
"Private Detective" as

" * * * a person who for private purposes, or in behalf of private persons exclusively, hires his services to (a) conduct investigations or inquiries with the purpose of obtaining information on public offenses, damages caused or attempted; the habits, credibility, conduct, movements, whereabouts, associations, transactions, reputation or character of any person; the location of stolen or lost property with the object of recovering same through the corresponding legal procedures; the causes and origin of and responsibility for fires or accidents or damages to real or personal property; the occurrence of any event; the truth or falsehood of any statement or representation; (b) procure or obtain evidence to be used before investigative or arbitration committees or boards, or before the courts in civil or criminal actions; (c) protect persons or real or personal property; or for preventing thefts or the misapplication or illegal appropriation of money, bonds, stock, or any kind of securities or documents."

One of the requirements imposed by section 4 for obtaining a license as a private detective is

"(k) To have successfully passed a course of study in a private detectives' school authorized by the Police Superintendent, with a minimum of 1,000 hours of study, and competent professional practice as determined by the Superintendent through regulation."

Section 7 requires all licensed private detectives and agencies to furnish a bond in the sum of $5,000.00.

The Act also regulates and requires the licensing of private detectives agencies and of safety agencies for the protection of private enterprises. By section 2 "Private Detectives Agency" is defined to mean and include

"any person engaged in the private detective business and employing one or more persons for such purposes."

"Safety Agency for the Protection of Private Enterprises" is defined to mean and include

"any person especially engaged in the rendering of custodial services or in the protection of private property in industrial, commercial and mercantile establishments, or in those related with agricultural enterprises and employing one or more persons for such purposes."

Section 19 of the Act prohibits private detectives and agencies covered by the Act from using trained dogs in the rendering of the private detective services defined in section 2 of the Act.

Section 20 prohibits private detectives and agencies covered by the Act from rendering services in cases "involving conflicts among laborers or labor-management disputes, or where a petition for election has been filed."

Section 31 states that the provisions of the Act shall not be applicable "to watchmen, night watchmen and guards who in their individual capacity are engaged in such trades or occupations in private enterprises or in public, industrial, commercial or agricultural establishments."

Finally section 16 of the Act authorizes the Superintendent of Police with the approval of the Governor to "promulgate such rules and regulations as he may deem convenient to make more feasible the implementation" of the Act.

The contentions of the plaintiffs may be summarized as follows:

They assert first, that it is arbitrary and unconstitutional for the Act to join in a single category for purposes of regulation under the designation "private detectives" those who merely serve to protect persons or property as watchmen or guards with those who conduct investigations and procure evidence who are commonly known as detectives and whom we have called sleuths.

Secondly, they assert that it is arbitrary and unconstitutional to impose the same requirement of 1,000 hours of preliminary scholastic study upon both groups.

They urge in the third place that it is arbitrary and unconstitutional to prohibit the use of trained dogs by those guards who are required to have licenses as private detectives when the Act does not prohibit the use of trained dogs by public officials or by watchmen and guards employed by private enterprises.

Finally, they urge that it is arbitrary and unconstitutional to prohibit licensed private detectives and agencies from rendering services in situations involving labor disputes or where a petition for an election has been filed, when the Act does not prohibit the employment of unlicensed individuals as watchmen or guards by enterprises involved in such labor controversies.

Pursuant to the authority granted to him by section 16 of the Act the Superintendent of Police on April 21, 1966, with the approval of the Governor, promulgated regulations under the Act.

Section 12 of the regulations classified private detectives into three different categories, (a) those who conduct investigations or inquiries, and (b) those who procure evidence, whom we have called sleuths, and (c) those who protect persons or property, whom we have called guards. By section 14 of the regulations an applicant for a license as a private detective of class (a) or class (b), a sleuth, must have successfully completed 500 hours of study in a private detective school and 500 hours of practice, while an applicant for a license in class (c) as a guard, is required to have completed only 100 hours of such scholastic study but must have had 900 hours of practice. Thus to the extent of authorizing different licenses and different qualifications of education and experience the regulations have distinguished between those licensees whom we have described as sleuths and those whom we have called guards and have imposed much lesser educational requirements upon the latter group.

It thus appears that the plaintiffs' second objection and perhaps their first have been met at least partially by the regulations which the Superintendent of Police and the Governor have promulgated under the Act. It is obvious, however, that difficult questions of constitutional due process remain and that these arise under the due process clause contained in section 7 of Article II of the Constitution of Puerto Rico, as well as under the Federal Constitution. It is equally obvious to us that the resolution of these questions depends in substantial part upon the scope of the Private Detectives Act as it is interpreted by the ultimate authority, the Supreme Court of Puerto Rico. For example, in the light of the exemption by section 31 of watchmen and guards who in their individual capacity are engaged in such trades or occupations in private enterprises or in public, industrial, commercial or agricultural establishments, what scope is to be given to the private detective business which under section 2 specifically includes the business of one who hires his services as a watchman or guard, and in which section 3 makes it illegal for an unlicensed individual to engage? It is clear that if section 31 is to be read very broadly as exempting all individual watchmen and guards engaged in these occupations in public or private industrial, commercial or agricultural establishments the scope of section 3 may be so narrowed with respect to watchmen and guards as to minimize or even eliminate the constitutional questions which the plaintiffs raise. In this connection the definitions of "Private Detective Agency" and "Safety Agency for the Protection of Private Enterprises" set out in section 2 may well be pertinent. For if these definitions are to be read as describing separate non-overlapping businesses, the "private detective business" referred to in the definition of "Private Detective Agency" would appear not to include the business of rendering watchman and guard service, which is the subject matter of the definition of "Safety Agency". If this is true consistency might require the definition of "Private Detective" appearing in section 2 to be read in the conjunctive as requiring all private detectives subject to the Act to

possess the qualifications to perform the first two types of service described in the definition, i. e. investigator and procurer of evidence, as well as the third type, watchman or guard. Under that construction of the Act those individuals qualified only as watchmen or guards would not be "private detectives" within the statutory definition and would consequently not be required to be licensed under the Act, a construction of the Act which it could be argued is supported by the language of section 31 exempting individuals engaged in the occupation of watchman or guard. Thus it appears that until the Supreme Court of Puerto Rico has given authoritative definition to the scope and applicability of the Private Detectives Act consideration of the constitutional issues raised in this case would be premature and perhaps unnecessary.

In such a situation as this the Supreme Court has held that it is appropriate for the district court to abstain from further proceedings until the state courts have been given the opportunity to consider and determine the questions of statutory construction and constitutional validity which are involved. Railroad Commission of Texas v. Pullman Co., 1941, 312 U.S. 496, 61 S.Ct. 643, 85 S.Ct. 971; Harrison v. NAACP, 1959, 360 U.S. 167, 79 S.Ct. 1025, 3 L.Ed.2d 1152; Martin v. Creasy, 1959, 360 U.S. 219, 79 S.Ct. 1034, 3 L.Ed.2d 1186; United Gas Pipe Line Co. v. Ideal Cement Co., 1962, 369 U.S. 134, 82 S.Ct. 676, 7 L.Ed.2d 623. As to the plaintiffs' right to reserve federal constitutional questions see England v. Louisiana State Board of Medical Examiners, 1964, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440.

We think that the application of the doctrine of abstention is particularly appropriate in a case such as the present one which involves the construction and validity of a statute of the Commonwealth of Puerto Rico. For a due regard for the status of that Commonwealth under its compact with the Congress of the United States dictates, we believe, that it should have the primary opportunity through its courts to determine the intended scope of its own legislation and to pass upon the validity of that legislation under its own constitution as well as under the Constitution of the United States.

An order will accordingly be entered staying all further proceedings in this case pending the commencement by the plaintiffs of litigation in the courts of the Commonwealth of Puerto Rico appropriate to raise the issues involved in this case and its prosecution to final determination by the Supreme Court of Puerto Rico. If it should appear that such a suit has not been instituted by the plaintiffs within a reasonable time after the entry of our order or that it is not being prosecuted diligently to final determination the defendants may apply for an order dissolving the existing restraining order and dismissing the present suit in this court.