THE WACKENHUT CORPORATION ET AL., Plaintiffs and Appellants, *v.* SALVADOR RODRÍGUEZ APONTE ET AL., Defendants and Appellees.

No. O-70-81. Decided March 23, 1972.

*Rodríguez Maduro & Torres Vilá* for The William J. Burns International Detective Agency, Inc., and William Martorani Masbernat. *Gilberto Gierbolini, Solicitor General,* and *Peter Ortiz, Assistant Solicitor General,* for appellees.

PER CURIAM: On June 29, 1965, the Private Detectives Act of Puerto Rico, Act No. 108 of that date was approved, 25 L.P.R.A. § 285 *et seq.,* Supplement, whose purpose as it is inferred from its title is "To regulate the private detective profession, the private detective agencies, the safety agencies for the protection of private enterprises, and the schools for

the training of private detectives, and to fix penalties for violations of this Act."

Wackenhut Corporation, Marvil International Security Services, Inc., and William J. Burns International Detectives Agencies, Inc., are corporations engaged in providing, through payment, guards and watchmen to private enterprises and they also render investigation services. Marvil also provides trained dogs for the custody of properties. Robert S. Hopler is manager in Puerto Rico of the Wackenhut Corporation.

Since said Private Detectives Act went into effect, the appellants lobbied trying to obtain a series of amendments to the same. In view of the fact that they did not attain their purposes, Wackenhut and Marvil filed, on September 10, 1965, in the United States District Court for the District of Puerto Rico, in San Juan, petitions for temporary and permanent injunction against the Superintendent of Police of Puerto Rico and other Puerto Rican officers to prohibit them from enforcing the provisions of said Act No. 108.

In their action before the Federal District Court, Wackenhut and Marvil alleged, summing up that the Act is unconstitutional for being arbitrary upon:

1. Including under the category of "private detectives" two different classes of individuals: the watchmen or guards and the detectives.

2. Exacting the same requirement—1,000 hours of study to the two different groups of individuals previously mentioned.

3. Prohibiting the use of trained dogs by those guards who are required to have licenses as private detectives when it does not prohibit the use of said trained dogs by police officers or by watchmen and guards employed by private enterprises for their protection.

4. Prohibiting private detectives and agencies covered by the act from rendering services in cases involving conflicts

among workers, or controversies between workers and employers, or in those cases in which petitions for union elections have been filed, when it does not prohibit the employment of unlicensed individuals as watchmen or guards in such cases.[1]

On September 13, 1965, a hearing was held before the Federal District Judge William C. Mathes, who, pursuant to the provisions of 29 U.S.C. § 2284, convened a three-judge District Court to entertain the matter. On September 16, 1965, at the request of the plaintiffs, Judge Mathes issued a temporary restraining order prohibiting the defendants from enforcing the cited Act No. 108 on the plaintiffs. Said order would be in force until the three-judge District Court determined otherwise.

The case was heard before the three-judge District Court, and the latter, through the opinion delivered by Maris, Circuit Judge, stayed all proceedings in said case to give an opportunity to the Courts of Puerto Rico to consider and determine the constitutionality of Act No. 108. Said three-judge court stated:

"We think that the application of the doctrine of abstention is particularly appropriate in a case such as the present one which involves the construction and validity of a statute of the Commonwealth of Puerto Rico. For a due regard for the status of that Commonwealth under its compact with the Congress of the United States dictates, we believe, that it should have the primary opportunity through its courts to determine the intended scope of its own legislation and to pass upon the validity of that legislation under its own constitution as well as under the Constitution of the United States."[2]

The decision of the three-judge District Court was affirmed by the Supreme Court of the United States in

---

[1] See the summary made by the Federal District Court of the contentions of the plaintiffs in *Wackenhut Corp.* v. *Aponte*, 266 F.Supp. 401, at p. 403.

[2] *Wackenhut Corp.* v. *Aponte*, 266 F.Supp. 401, 405 (1966).

*Wackenhut Corporation et al.* v. *Aponte,* 386 U.S. 268 (1967).[3]

In view of the foregoing Wackenhut and Marvil filed in the Superior Court of Puerto Rico, San Juan Part, a petition for Declaratory Judgment, to litigate about the constitutionality of Act No. 108. Subsequently William J. Burns International Detectives Agencies, Inc., who had not been a party in the action before the U.S. District Court, filed a motion for intervention in the Superior Court of Puerto Rico and the same was granted. The Superior Court granted a motion for preliminary injunction in favor of Burns, similar to the one which the U.S. District Court had granted in favor of Wackenhut and of Marvil. These orders of preliminary injunction were in force until the final determination of this case.

At this stage of the proceedings the Legislature of Puerto Rico amended Act No. 108 of 1965 by Act No. 126 of June 24, 1968.[4] The amendments made are considerable in extension and in content. The title and 11 sections of the former act were amended. We shall return to this later on.

The Superior Court of Puerto Rico, San Juan Part, before which the petition for Declaratory Judgment was litigated, sustained the validity of the Act in all its parts, by means of its opinion of September 12, 1969. Appeal from said decision was taken separately by Wackenhut and Burns before this Court. Wackenhut's appeal was dismissed for want of jurisdiction, Appeal O-69-227. A motion by Wackenhut to intervene in the present appeal was denied by us on May 8, 1970. We also denied the motion of the Solicitor General of Puerto

---

[3] For a recent expression of the application of the doctrine of abstention to Puerto Rico, see *Fornaris* v. *Ridge Tool Co.,* 400 U.S. 41 (1970).

[4] The Private Detectives Act that appears in the Supplement to Title 25 of L.P.R.A., contains, of course, Act No. 108 of 1965 as amended by Act No. 126 of 1968.

Rico to dismiss Burns' appeal. The appellants filed their brief in the court on May 15, 1970.

Since in the assignment of errors and in the discussion of the same that appears in appellants' brief there is a certain repetition and some overlapping, in order to have an orderly discussion of the matters raised, we have made the following organization of the same:

1. Whether the provisions of the Act are unconstitutionally arbitrary, capricious, and unreasonable in that:

(a) they join watchmen or guards with those who conduct investigations and classify them as private detectives,

(b) they prohibit agencies and private detectives from rendering their services in situations involving labor disputes,

(c) they prohibit agencies and private detectives from using trained dogs while rendering their services,

(d) they authorize to revoke the license of an agency when one of its employees has been convicted of certain offenses.

2. Whether it is contrary to the constitutional rights of the equal protection of the laws and of the due process of law to impose upon watchmen or guards employed by Security Agencies certain requirements that are not imposed upon persons that work as guards or watchmen in their individual capacity.

We will examine every one of these questions separately. Since Act No. 108 was substantially amended by Act No. 126 of 1968 and since the Act as amended is the one in force, we have to examine all these questions in the light of the text of the Act in force. On account of the mentioned amendments made to the Act in 1968 the situation now is different to the situation which existed in 1965 and 1966 when Wackenhut and Marvil litigated in the United States District Court.

■ Before entering into the discussion of the specific points raised by the appellant, it is convenient to mention at least the two major premises that govern this case. One consists in that there is no doubt that the state can regulate the businesses engaged in rendering services of watchmen or guards and the occupation of private detectives. As it has

been said, it is very commonplace to say that the exercise of police is one of the necessary activities of government and all that pertains to it may be subjected to regulation and surveillance by the state as a precaution against perversion. *Lehon* v. *Atlanta,* 242 U.S. 53 (1916), 61 L.Ed. 145, 149. More than 25 of the Federal states of the Union regulate those activities. See *Regulation of Private Police,* 40 So. Cal. L. Rev. 540 (1967). We have been able to examine 16 of those state laws.[5]

The second premise consists in that the regulation of said businesses and of said occupation—as any governmental regulation—has to be maintained within the limits of the Constitution of Puerto Rico and of the provisions of the Constitution of the United States which are in force in Puerto Rico.

Let us see now the points raised by appellant.

1. (a) To designate the watchmen or guards as "private detectives." It is true that watchmen or guards are included in the definition given by the act to private detective. But this in itself is not unconstitutional. No one would seriously argue that a statute is unconstitutional because, for example, it includes physicians and nurses under one definition (as for example, saying that they are persons engaged in attending to the sick) provided the requirements to practice each one of

---

[5] In alphabetical order by states: West's Ann. (California) Bus. & Prof. Code, § 7500 *et seq.;* Connecticut General Statutes Ann., § 29-153 *et seq.;* 24 Delaware Code Ann., § 1301 *et seq.;* Florida Statutes Ann., § 493.01 *et seq.;* 38 Smith-Hurd Illinois Ann. Stat., § 201-1 *et seq.;* Burn's Indiana Statutes Ann., § 42-1207 *et seq.;* 5 Annotated Code of Maryland, Art. 56, § 75 *et seq.;* Mass. General Laws Ann., Ch. 147, § 22 *et seq.;* Michigan Compiled Laws Ann., § 338.821 *et seq.;* 45 New Jersey Statutes Ann., § 45:19-8 *et seq.;* 10 New Mexico Statutes Ann., § 67-33-1 *et seq.;* 19 McKinney's Consolidated Laws of New York Ann., Art. 7, § 70 *et seq.;* General Statutes of North Carolina, Ch. 66, § 66-49.1 *et seq.;* 9 North Dakota Century Code Ann., § 43-30-01 *et seq.;* 22 Purdon's Pa. Statutes Ann., § 11 *et seq.;* 12B Vernon's Civil Statutes of Texas Ann., Art. 4413 (29bb).

said professions and the regulation thereof are reasonably related to their respective activities.

Before the amendment of the year 1968, the act required the watchmen or guards to comply with certain requirements identical with those required from the private detectives, to have successfully passed a course of study with a minimum of 1,000 hours of study, and practice. But the amendment of 1968 changed that and now the course required from the watchmen or guards is only 4 weeks. Section 4(B) of the Act, 25 L.P.R.A. § 285c(B). The law in force requires the following requirements from watchmen or guards: Be over 21 years of age, not to have been convicted of a felony or misdemeanor involving moral turpitude, be a person of excellent moral reputation, to have furnished a bond, to have paid a $2.00 license fee, not to be a habitual drunkard, nor mentally unbalanced and not to have been convicted for drugs, to supply his fingerprints, not be an employee of the government, and to have approved a training course of 4 weeks.

■ What the situation was before the amendment of 1968 is something we need not decide now, but surely none of the requirements that the law exacts at present from the watchmen or guards are unconstitutionally unreasonable, arbitrary or capricious, except for what is said hereinafter in paragraph (d) of this opinion about the requirement of not having been convicted of a misdemeanor involving moral turpitude.

(b) The provisions of the act that prohibit the private detectives and agencies covered by the act from rendering services in cases involving conflicts among laborers or labor-management disputes, or where a petition for election has been filed. Section 20 of the Act, 25 L.P.R.A. § 285s.

The evils which § 20 wants to prevent are very well known among those who have followed the history of the labor-management conflicts. See the note *Industrial Policing*

*and Espionage*, in 52 Harv. L. Rev. 793. The intervention or presence of a private force of watchmen or guards provided by a security agency in the tense atmosphere that usually prevails in labor conflicts constitutes a potential element of violence. The exercise of viligance and custody, always, but especially during moments of tension as are the labor-management conflicts, is part of the police power of the state. It is natural that the parties involved in those conflicts be ordinarily less irritable because of the presence of the governmental police than of a private police. It may be assumed that the government police is impartial. The laborers cannot assume that a private police paid by the management is impartial. Furthermore, the management and the private agency that provides the watchmen or guards do not feel the inhibitions or dissuasives in their conduct usually felt by the agents, employees, and public officers.

 What the lawmaker has preferred is that in those moments of tension produced by labor conflicts, in which an imprudence may entail passions that produce human tragedies, the public and not the private police is the one in charge of maintaining the peace. That preference is one that falls within the scope of public policy which is incumbent upon the Legislative Power to exercise.

The purpose of § 20 of the Act arises with clarity from the legislative debate which took place in the year 1960 when an amendment to House Bill No. 433, which had a title like that of Act No. 108, was discussed. On that occasion, the debate concerned the necessity of incorporating to the legislation a provision as the one of § 20. The Representative, Mr. Aponte, expressed on that occasion the following:

". . . The reasoning of the Commission in formulating this amendment is that there could be used a force of detectives or a force of guards or watchmen, a uniformed force, a force that impresses, organized, prepared—prepared for the contingencies that usually are attributable to a police force—to be used

against a labor organization by an employer. This is why the amendment which the commission offered prohibits the intervention of this type of activity in conflicts between laborers or between workers and employers."—13 *Diario de Sesiones* 1060.

 The legislative history demonstrates that the purpose of the lawmaker was to prevent that when a labor conflict arises the employer may contract the services of watchmen or guards from a security agency. It is not the purpose of § 20 to prevent, when a labor conflict arises, the employer from continuing to use the services of watchmen or guards which it had been using in normal functions of vigilance. The section itself states that what is prohibited is that those services be rendered "in cases involving conflicts among laborers or labor-management disputes, or where a petition for election has been filed." Section 20 is not an absolute prohibition against the employment of watchmen or guards, but limits itself to the special situations comprised within its text. Said section does not prohibit the employer from continuing using the watchmen or guards that it has been normally using for the custody of his property. The preoccupation of the lawmaker evidenced by said § 20 is the legitimate preoccupation of the Legislative Power and we do not find that it has molded it into an arbitrary, capricious, and unreasonable manner. The legislation of various states shows that other state legislatures have also worried about this problem. New York and Pennsylvania have adopted measures equal to those of Puerto Rico. 19 McKinney's Consolidated Laws of New York Ann., § 84; 22 Purdon's Pennsylvania Statutes Ann., § 26.

 (c) The prohibition of the use of trained dogs. Section 19 of the Act, 25 L.P.R.A. § 285r. The only watchmen or guard agency which furnished trained dogs was Marvil and we have no appeal from that agency before us. We only have before us Burns' appeal. Burns does not allege that it

uses or that it furnishes trained dogs in the course of its functions. Therefore, appellant does not have any title or legal right which could be affected by the affirmation or reversal of the judgment appealed from and, consequently, lacks standing to request us to review this particular. *Tugwell, Governor* v. *Barreto,* 65 P.R.R. 469, 478 (1945); *Cortés* v. *Rivera,* 41 P.R.R. 297, 300 (1930). The declaratory judgment is limited to the rights really affected by the statute in question and as we have seen the prohibition of using trained dogs does not affect the appellant, who did not allege or prove that he used them.

■ Nevertheless, we believe that it is useful to state that in connection with the prohibition of the use of trained dogs contained in § 19 of the Act, 25 L.P.R.A. § 285r, the reason which the lawmaker had to establish this prohibition can be understood very well. As it is known, the trained dogs used by the Security Agencies are very big dogs, fearful, and nearly everybody feels intimidated before them. It is natural that those dogs intimidate the laborers even in legitimate functions, such as walking in pickets, holding of meetings near the place of work, etc. This power of intimidation is greater among female laborers. It is of general knowledge that a great part of the Puerto Rican industry, being an industry of clothes, employs women. But even among male laborers the situation that we have pointed out may happen. The evil indicated is one that the lawmaker can properly prevent.

■ (d) Revocation of the license of an agency when one of its employees has been convicted of a public offense. Section 17 (c) of the Act, 25 L.P.R.A. § 285p (c). We do not have to decide this assignment now because in this suit it is not alleged that the license of any agency has been revoked because one of its employees has been convicted of a public offense. The purpose of § 17 is that the persons having

private detective licenses and the watchmen or guards of the security agencies be persons of a good conduct, that they are not criminals, that they are not persons with tendencies to commit offenses, tramplings or abuses because persons with those tendencies in any police force—public or private—are a threat to the security and tranquility of everyone.

We understand that the purpose of the statute is to permit that a license be revoked or that its renewal be denied when the member or employee of the agency has committed an offense while acting under the orders or with the express or tacit consent of the officers or directors of the agency. In this context we use the word officers including not only the traditional officers of a corporation (president, treasurer, secretary, etc.) but including also those executives and heads of offices or of the field who exercise authority on the employees or members of a security agency. Likewise it is also proper to revoke or deny renewal of licenses to private detectives or other persons who have licenses in their individual capacity when they commit a public offense.

Apparently the law of Illinois limits the sanction (revocation of license, etc.) to when the one who has committed the act is a person who possesses the license or is a partner of a partnership or is an officer of a corporation of those engaged in these police activities. 38 Smith-Hurd, Illinois Ann. Statutes, § 201-16 (c). It is likewise done by the law of North Dakota. 9 North Dakota Century Code Ann., § 43-30-12. On the contrary, the law of Florida contains a provision like ours. 15B Florida Statutes Ann., § 493.14 (c).

■ 2. The law imposes on the watchmen or guards employed by Security Agencies certain requirements which are not imposed upon persons who work as watchmen or night watchmen in their individual capacity. Section 31 of the Act, 25 L.P.R.A. § 286c, provides in its second paragraph that the provisions of the Act shall not be applicable to night

watchmen, or watchmen and guards who in their individual capacity are engaged in such trades or occupation.

■ There is no doubt, then, that the Legislature has classified the watchmen or guards into two classes. One comprises the employees or members of Security Agencies regulated by Act No. 108, and the other class is composed of watchmen, night watchmen, and guards to whom the Act is not applicable by virtue of its § 31. Nevertheless, this classification is not repugnant to the conscience for being based on illegitimate prejudgments or motivations or for being unfair. In considering the persons who work as watchmen or night watchmen in their individual capacity as a class of guards different from the watchmen or guards who are employees of Security Agencies, the Legislature has recognized a reality of our social and economical structures. One thing is the employee who forms part of the guard force of a Security Agency, uniformed, trained, motorized, probably armed and capable of acting in groups, and another thing is the old watchman or night watchman, much older than our incipient industrialization, who operates without uniform, usually unarmed, and in an individual manner. The problems of public order which the latter may create are the problems which any citizen may create; not as those which the guards employed by professional security agencies may create. See 52 Harv. L. Rev. 793.

Moreover, when the Legislative Power attacks an aspect of a problem it is not bound to attack all of them at the same time. It is enough that the State's action be rationally based and free from invidious discrimination. *Dandridge* v. *Williams*, 397 U.S. 471, 486–487.

■ In the regulation concerning the area of economics and social welfare the Equal Protection Clause is not violated merely because the classifications made by its laws are imperfect. To deal with the practical problems of government sometimes it is necessary to make classifications even

though the lines of demarcation are a bit rough and those legislative determinations will not be set aside if the state of facts justify it. *Dandridge* v. *Williams, supra* at p. 485. The classification made by the Legislature here falls within what is constitutionally permissible.[6]

On the contrary, there are areas in which, because of their tangency with human dignity and with the principle that everyone is equal before the law, any classification is inherently suspicious and is subject to the most prolix judicial scrutiny. These areas include the classifications or discriminations on account of race, color, sex, birth, social origin or condition, political or religious ideas and nationality. Constitution of Puerto Rico, Art. II, § 1; *Graham* v. *Richardson*, 403 U.S. 365, 371–372 (1971).

We have passed judgment on the errors assigned in the light of the law in force, after the amendments of the year 1968. The constitutionality of the parts of Act No. 108 of 1965 which are not in force for having been amended by Act No. 126 of 1968 is now an academic problem.

Judgment will be rendered accordingly.

Mr. Chief Justice Negrón Fernández, Mr. Justice Hernández Matos, Mr. Justice Ramírez Bages, and Mr. Justice Martín took no part in the decision.

---

[6] At least eleven states have provisions similar to ours. They exclude from the regulation the persons that render their services as watchmen or night watchmen in their individual capacity. 38 Smith-Hurd Illinois Ann. Stat., § 201-2; New Jersey Stat. Ann., § 45:19-9(a); 21 Purdon's Pa. Stat. Ann., § 25; Mass. Gen. Laws Ann., Ch. 147, § 23(3); Michigan Comp. Laws Ann., § 338.824; 10 New Mexico Stat. Ann., § 67-33-10(A); 5 Ann. Code of Maryland, Art. 56, § 75(a); Vernon's Texas Civil Stat. Ann., Art. 4413 (29bb), § 14; 24 Delaware Code Ann., § 1301(a); Gen. Stat. of North Carolina, § 66-49.2(2)(d); West's Ann. California Codes, Bus. & Prof. Code, § 7522(a).