The **WACKENHUT CORPORATION** and Robert S. Hopler, Plaintiff,

v.

The Hon. Astol **CALERO**, Acting Superintendent of Police, et al.,[1]
Defendants.

Civ. No. 395–65.

United States District Court,
D. Puerto Rico.

April 10, 1973.

---

1. The names of the parties reflect the changes since 1965.

McConnell Valdés & Kelley, San Juan, P. R., for Wackenhut and Hopler.

Parke, Graves, & Rodríguez Maduro, Santurce, P. R., for Marvil.

J. F. Rodríguez Rivera, Acting Sol. Gen., Dept. of Justice, San Juan, P. R., for defendants.

Before MARIS and McENTEE, Circuit Judges, and TOLEDO, District Judge.

## OPINION OF THE COURT ON FINAL HEARING

TOLEDO, District Judge.

This proceeding began before us in 1965. At that time, Wackenhut, Hopler[2], and Marvil[3] brought this action seeking to have declared unconstitutional on due process grounds, under the United States Constitution, Law 108 of 1965 as enacted by the Legislature of Puerto Rico. After hearing on the merits, this Court on June 23, 1966, issued its opinion and order in which it abstained from ruling on the constitutionality of Law 108 unless and until plaintiffs sought a determination as to its meaning and validity in the courts of Puerto Rico. Wackenhut Corp. v. Aponte, 266 F.Supp. 401, 405 (D.P.R. 1966), aff'd, 386 U.S. 268,[4] 87 S.Ct. 1017, 18 L.Ed.2d 37.

Thereafter, plaintiffs on March 29, 1967, instituted a declaratory judgment suit in the courts of Puerto Rico seeking to have Law 108 declared unconstitutional under the due process clauses of both the Puerto Rico and United States Constitutions. Plaintiffs specifically reserved their right to return to this Court for resolution of federal constitutional questions. England v. Louisiana State Board of Medical Examiners, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

The lower court upheld the statute's constitutionality, and an appeal was taken. In March 1972, the Puerto Rico Supreme Court issued its opinion, upholding the law's constitutionality and its applicability to plaintiff's operations[5].

Plaintiff has now returned to us for disposition of federal constitutional is-

---

2. Hopler is Wackenhut's manager in Puerto Rico.

3. Marvil is no longer in business and no longer a party to this proceeding.

4. The temporary restraining order issued by this Court on September 17, 1965, was left standing and has been in effect throughout all these proceedings.

5. The official English version of the Court's opinion is as yet unavailable. However, an English translation has been supplied by the Court.

sues, left pending in our 1966 holding[6]. A final hearing has been held and the proceeding is now ready for adjudication.

## I. *Substantial Federal Question*

One of the requirements of Title 28, United States Code, Section 2281, is that the constitutional question be substantial. Defendants have hinted that said requirement has not been met herein because plaintiffs allegedly have "failed to state what substantially federally protected right is violated by grouping together private investigators and guards." Defendants also state that "plaintiffs fail to show a clear-cut federally protected right that is invaded by the prohibition against use of trained dogs by private detective agencies," that they "know of no federally protected constitutional right to the advantage of having an independent contractor carry all the burdens of liability for damages inflicted to laborers involved in a labor dispute."

Defendants read Section 2281 too narrowly. Obviously the Constitution does not expressly provide anything as to classification of private investigators and guards, use of trained dogs by private detective agencies or use of independent (security) contractors during labor disputes. But the questions of the existence of a substantial constitutional question is to be determined by the allegations in the complaint. Zemel v. Rusk, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). If the complaint seeks to forestall the demands of some general state policy, the validity of which is challenged, it may raise a substantial constitutional question.

The complaint herein contains, with much greater detail than that required by Rule 8(a) of the Federal Rules of Civil Procedure, specific allega-

tions as to the sections of the statute attacked, the constitutional grounds for such attack and why said sections are invalid under the Constitution. Moreover, in the abstention opinion of June 28, 1966, this Court recognized that "difficult questions of constitutional due process remain and that these arise under the due process clause contained in Section 7 of Article II of the Constitution of Puerto Rico, as well as under the Federal Constitution."

We hold that the jurisdictional prerequisite of Title 28, United States Code, Section 2281 has been met. See Brotherhood of Locomotive Engineers v. Chicago R. I. & P. R. Co., 382 U.S. 423, 86 S.Ct. 594, 15 L.Ed.2d 501 (1966); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

## II. *Constitutionality of the Statute*

### (a) *Section 19 (Dogs)*

Section 19 of Law No. 108 of 1965, Title 25, Laws of Puerto Rico Annotated, Section 285r, provides as follows:

"The private detectives and agencies covered by this chapter shall not use trained dogs in the rendering of the services defined in Section 2."

Section 19 has been justified on the grounds that trained dogs used by security agencies are huge, fierce and intimidating to most people and that such dogs intimidate workers even in their legitimate activities (walking on picket lines, holding meetings near the job site, etc.).

It must be pointed out that Section 19 embodies 'a flat prohibition applicable both within and without the context of a labor dispute. The use of trained dogs by private detectives or by security agencies is outlawed at all times and places.[7] The used of trained dogs by persons other than private detectives[8] and agencies is unregulated.

---

6. For an indication of attempts other than by governmental representatives to enforce Law 108 since 1965, see Wackenhut v. Union de Tronquistas (Teamsters) Local 901 et al., 336 F.Supp. 1058 (D.P.R.1971).

7. The statute says nothing about untrained dogs.

8. The statute uses the term "detectives" to include "guards".

Thus, while private detectives and agencies may not used trained dogs anywhere or at any time, all other persons may use such trained dogs.

The record in these proceedings is devoid of evidence to justify the absolute prohibition of the use of dogs by security agencies, other than what has recently been called a "speculative explanation". Santin Arias v. Examining Board of Refrigeration and Air Conditioning Technicians, 353 F.Supp. 857 (1972).

But even assuming that the record contained evidence of the size, ferocity and intimidating characteristics of trained dogs and of their use within the labor context of the purpose of intimidating workers engaged in legitimate activities, Section 19 is invidiously discriminatory. Any person may use trained dogs at any time or place except the targets of Section 19, detectives and agencies. As a matter of fact, defendants in their original answer to the complaint[9] admit that watchmen and guards exempted from coverage by Section 31 of the Act may used trained dogs in the rendering of their services.

█ It would appear to this Court, then, that the purpose of Section 19 is discrimination for its own sake, and even assuming that the record contained[10] the purported justification for it, we find said "justification" insufficient to support the discrimination embodied in Section 19, simply because the evils allegedly sought to be proscribed cannot be proscribed by it. The statute, to satisfy constitutional strictures, should embody a regulatory scheme *reasonably* related to the achievement of the governmental purpose asserted as its justification the means used should be *reasonably* necessary for the accomplishment of the governmental purpose, and not unduly oppressive upon individuals. Bates v. Little Rock, 361 U.S. 516, 80 S.Ct. 412, 4 L.Ed.2d 480 (1959); Goldblatt v. Town of Hempstead, 369 U.S. 590, 82 S. Ct. 987, 8 L.Ed.2d 130 (1962); Nebbia v. New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940 (1934). The Court finds that Section 19 is discriminatory on its face and without sufficient justification and that as such, it may not stand.

(b) *Section 20 (Labor Disputes)*

█ Section 20 of the Act, Title 25, Laws of Puerto Rico Annotated, Section 285s, provides as follows:

"Rendering of Services prohibited

The private detectives and agencies covered by this chapter shall not render the services defined in section 285a of this title in cases involving conflicts among laborers or labor-management disputes, or where a petition for election has been filed. Neither shall they render said services to an employer with whom a labor union has negotiated a collective bargaining agreement for the rendering of equal services, or when, upon expiration of a collective bargaining agreement, the parties are negotiating a new agreement.[11]

The testimony of private detectives shall not be admitted in court on matters about which they have obtained information as a result of services rendered in violation of the prohibition established in this section; neither the oral testimony of any person who has learned of the facts on which he is testifying while acting as agent, attorney or collaborator or by instructions of private detective; nor any documentary or objective evidence likewise obtained."

9. In their amended answer defendants then deny Par. 9(d) of the complaint. In order to avoid disregarding said denial as sham and false in the light of Section 31 of the Act, we treat said denial as directed to the allegation of unconstitutionality rather than a denial of what Section 31 clearly provides.

10. Which it does not.

11. Where the National Labor Relations Act is applicable, it would preempt the second sentence of the first paragraph of Section 20. See Fibreboard Paper Products Corp. v. N. L. R. B., 379 U.S. 203, 85 S.Ct. 398, 13 L.Ed.2d 233 (1964).

The regulations issued under the authority of the Act, Title 25, Rules and Regulations of Puerto Rico 2580–102, define "conflicts among laborers" as "those labor conflicts that develop between groups of workers, provided said conflicts are substantially affecting the normal operation of any enterprise or the public interest"; "labor-management disputes" are "strikes and threat of strike(s), the latter meaning those situations where a labor organization officially notifies the employer that it will go on strike on a fixed date, or situations where there are clear signs that there has been a break in the collective bargaining and there exists a strike threat clearly evidenced by concrete acts directed or oriented to giving rise to a strike movement"; "where a petition for election has been filed" is defined as "cases where a petition for election has been filed because of the existence of a 'conflict among laborers' or a 'labor-management dispute' " as previously defined.

 It is fairly obvious that an employer may not use other people to incite strikers or to interfere with their concerted activities. Such actions are prohibited by existing federal and local legislation.[12] The hiring of private detectives or agency guards for the purpose of interfering with employees' protected rights is likewise unlawful. On the other hand, the existence of violence during labor disputes has been judicially noticed. Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1971).[13] Greater protection of life and property [14] during said disputes would be a not unwarranted corollary.

 The Puerto Rico Supreme Court's approach to the problem does not resolve the constitutional issue before us. The Court approves what is apparently the Commonwealth's public policy to have potentially explosive labor situations dealt with by the government police force.[15] We need not comment upon either the merits or the lawfulness of such a policy. For the issue before us, on the basis of the Puerto Rico Supreme Court's interpretation of Section 20, is not one of requiring only government police to deal with labor difficulties. The issue before us is the prohibition against the use of security agency guards for the protection of property, simply because a labor dispute is concurrently in progress.[16] We find little to

---

12. 29 U.S.C. § 141 et seq.; 29 L.P.R.A. 61 et seq. The use of "private armies" of strike-breakers is proscribed under said legislation. Clover Fork Coal Co., 4 N.L.R.B. 202; N. L. R. B. v. Ford Motor Co., 114 F.2d 905 (6 Cir. 1940); Union Drawn Steel Co. v. N. L. R. B., 109 F.2d 587 (3 Cir. 1940); N. L. R. B. v. West Kentucky Coal Co., 116 F.2d 816 (6 Cir. 1940); Santa Cruz Fruit Packing Co., 1 N.L.R.B. 454; Remington Rand, 2 N.L.R.B. 626; Peninsular & Occidental S.S. Co., 5 N.L.R.B. 959; Sterling Corset Co., 9 N.L.R.B 858; Williams Coal Co., 11 N.L.R.B. 579.

13. See also El Imparcial, Inc. v. Brotherhood, etc., 82 P.R.R. 158 (1961); Union de Trabajadores de la Industria Licorera, United Packinghouse Workers of America, 51 L.R.R.M. 1349; Hermandad de Trabajadores de la Construcción (P.R. Dist. Council United Brotherhood of Carpenters and Joiners of America), 127 N.L.R.B. 900; El Mundo, Inc. v. P. R. Newspaper Guild, Local 225, 346 F.Supp. 106 (D.P.R.1972);

Murphy, The Meaning of Freedom of Speech (Greenwood Publishing Co., Westport, Conn.1972).

14. The protection of persons or real or personal property and custodial services are services defined in Section 2 of Act 108, 25 L.P.R.A. 285a.

15. The Puerto Rico Supreme Court's reliance upon the guard regulatory statutes of New York and Pennsylvania is misplaced. Both statutes outlaw the hiring of additional armed guards during labor disputes, but in no way limit the number of *unarmed* guards which may be hired.

16. Undoubtedly, it is the government's function, and not the guard agency's, to maintain public order. But in the context of a Section 20 situation, the public police stay outside the employer's property virtually at all times. The employer must himself look after necessary industrial vigilance functions, such as standing duty at entrance gates, noting license plate numbers, keeping

support such a prohibition. This is particularly true when any employer may put any number of guards directly on his own payroll during a labor dispute with no concern for Law 108 at all. Under these circumstances, it would appear that the only end achieved by Section 20 is to convince employers that if additional security agency guards may not be hired for property protection because a labor dispute is in progress, then there is little to be said for utilizing security agency guards at all. The impact upon, in this case, Wackenhut, is fairly obvious.

■ We find that Section 20 fails to accomplish any permissible end, and in fact, unnecessarily infringes upon plaintiff's guaranteed rights of liberty and property without due process. Compare Liggett & Co. v. Baldridge, 278 U.S. 105, 49 S.Ct. 57, 73 L.Ed. 209 (1928).[17]

(c) *Section 4(B)(b)* (The Training Requirements)

The statute, as enacted in 1965, required everyone[18] seeking a license as private detective, to fulfill a 1,000 hour training requirement. Wackenhut questioned, in its original complaint, the reasonableness of such a requirement. In 1968, between our abstention ruling and the Puerto Rico Supreme Court's opinion, the Legislature amended the statute[19] to reduce the training requirement for the "guard" classification to a four week course to be offered by any agency who intends to use the guards' services.

While we are reluctant to proceed, we seem to have little choice. For in almost five years, the Superintendent of Police has never issued amended regulations to cover the training aspect.[20]

We have before us only the uncontested assertion of Wackenhut that four weeks' training is excessive, and that if the requirement stands, pirating of personnel will set in, each guard agency preferring to let his competition do his training for him. Wackenhut also makes the unopposed contention that no agency can long survive with these training requirements, *unless* the training is "in service" or "on the job", thus permitting the agency to charge a client for most, if not all, of the training time.

■ Such a system would apparently require the issuance of "temporary" or "training" license. There may also be other ways of handling the problem. Under normal circumstances, these should best be investigated and considered by the Superintendent of Police. Unfortunately, nothing has been done in almost five years. Furthermore, this case is now going on eight years old. In view of this state of the record, and particularly the uncontested assertions that the training requirements are totally unreasonable, we have no alternative but to

---

visitor's schedules, punching key stations, preparing and distributing identification cards, checking identification of persons who seek to enter the premises, filing reports, patrolling the premises from the inside, checking for fires, etc. See Transcript of hearing of February 8, 1966, pp. 160, 181, 213 and 214. And even when performing their principal function of maintaining order, the public police may be well aided by private individuals. See Report of the National Advisory Commission on Civil Disorders ("Kerner Report"), Chapter 12, Section 4 (1968).

17. Our holding goes also to the prohibition against admissibility of evidence set forth in Section 20, since it is grounded on violation of the prohibition against performing guard services, which we have found to be invalid.

Moreover, even when independently viewed as an evidentiary rule, its real purpose is to effectuate the labor dispute prohibition since it cannot reasonably be said that it is an exclusionary rule, there being no basis to believe that the evidence sought to be excluded is wholly unreliable. Compare P. R. Law of Evidence, 32 L.P.R.A., Sections 1664 and 1732. Apparently, under Section 20, a security agency guard serving in violation of that section's prohibition, would not be able to testify if he saw one striker kill another.

18. With some exceptions not relevant here.

19. Law No. 126 of 1968.

20. The Court made it clear in the 1966 hearing that the temporary restraining order in no way affected the government's right to prepare regulations.

strike them down, unless, within a reasonable period of time after entry of our opinion, the Superintendent of Police issues training regulations permitting "in service" or "on the job" training, which will permit the security agencies to continue to operate. We assume, of course, that the statute would permit such an arrangement. If the Superintendent of Police is advised that the training requirements are not capable of such an interpretation, then, of course, Section 4(B)(b) must fall.

No one, in the almost eight years since this action was commenced, has ever questioned the authority of the Commonwealth Government to regulate the security agency business. Indeed, plaintiffs point with approval to at least 33 states which regulate detective agencies, security agencies, or both.[21] It has professed no objection to any of them. Most are similar. Essentially, they are regulatory of the business of security and detective work. *None* outlaws the use of dogs. *None* outlaws the use of security agency guards during labor disputes. *None* licenses individual guards, as opposed to the agencies by whom they are employed. *None* establishes training requirements for guards.

Our decision of today leaves the Legislature free to enact legislation regulating security and detective agencies. Our only requirement is that it remain within accepted constitutional bounds.

## CONCLUSION

Law 108 of 1965, as amended, insofar as it

(a) Prohibits the use of trained dogs in its Section 19;

(b) Prohibits the rendering of guard services by a security agency during labor disputes as set forth in its Section 20, is unconstitutional. The training requirements set forth in its Section 4(B)(b) are invalid unless the regulations may permit "in service" training.

A judgment will be entered declaring Law 108 of 1965, as amended, invalid and unenforcible against the plaintiffs to the extent indicated in this opinion. However, because, as expressed in Santin Arias v. Examining Board of Refrigeration and Air Conditioning Technicians, supra, "the Court has no doubt that the declarations contained herein will be complied with by the Commonwealth authorities", we think it unnecessary to enter a permanent injunction at this time, but will retain jurisdiction to do so later if it should appear necessary.

## FINAL JUDGMENT

This action came on for final hearing before the Court, Judges Maris, McEntee and Toledo sitting, and the issues having been duly heard and the opinion of the court having been duly rendered,

It is Adjudged that Law 108 of 1965 of the Commonwealth of Puerto Rico, as amended, is invalid and unenforceable against the plaintiffs to the extent indicated in the opinion of this Court, and

It is Ordered that the preliminary injunction heretofore issued in this action is hereby dissolved, but that the Court will retain jurisdiction hereafter to grant a permanent injunction upon application of the plaintiffs if the facts then shown to the Court should warrant such relief.

---

21. Arizona, Arkansas, California, Connecticut, Delaware, Florida, Hawaii, Illinois, Indiana, Iowa, Kansas, Maine, Maryland, Massachusetts, Michigan, Minnesota, Nebraska, Nevada, New Jersey, New Mexico, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Virginia, West Virginia, Wisconsin.