PUERTO RICO INTERNATIONAL
AIRLINES, INC., Plaintiff,

v.

Luis SILVA RECIO, Secretary of Labor
of the Commonwealth of Puerto
Rico, Defendant,

v.

AIR LINE PILOTS ASSOCIATION,
INTERNATIONAL, Intervenor.

Civ. No. 688–73.

United States District Court,
D. Puerto Rico.

Dec. 18, 1975.

McConnell, Valdés, Kelley, Sifre, Griggs
& Ruiz-Suria, San Juan, P.R., for plaintiff.

Secretary of Justice, Com. of Puerto Rico,
Dept. of Justice, San Juan, P.R., for defend-
ant.

## OPINION AND ORDER

TOLEDO, Chief Judge.

This is an action for declaratory relief which originally commenced with the filing of a complaint for declaratory and injunctive relief by Puerto Rico International Airlines, Inc. (Prinair), naming as defendant Luis Silva Recio, Secretary of Labor of the Commonwealth of Puerto Rico (Secretary). This complaint was dismissed by order of this Court on April 17, 1974.

Plaintiff herein seeks declaratory relief against the Secretary to prevent the execution of local wage and hour laws asserting that the application of such laws to Prinair is inconsistent with Federal laws regulating the aviation industry.

Prior to any act in the Federal scenario, an action was filed against Prinair in 1970 in the Commonwealth Superior Court, having as party plaintiff some Prinair pilots who invoked the herein challenged local wage and hour statutes and seeking a back pay award against therein defendant Prinair. In the local courts Prinair asserted the claim that the statutes were in conflict with Federal laws and therefore invalid. The Superior Court rejected the theory of Federal preemption and the Supreme Court of Puerto Rico refused to entertain an interlocutory appeal on this issue. It was then, in 1973, that Prinair filed its claim in this Court.

As it appears from the record, and as Prinair alleged in its amended complaint, in the case against it before the Superior Court, Prinair raised the issue of preemption as an affirmative defense, which the Superior Court rejected. Thereafter, Prinair filed a petition for a writ of certiorari in the Supreme Court of Puerto Rico to review this decision, and the Supreme Court dismissed the petition. After several other proceedings before the Superior Court, Prinair filed another petition for a writ of certiorari which the Supreme Court of Puerto Rico granted on May 8, 1975. In this petition Prinair alleged that the Superior Court had erred in rejecting Prinair's claim of preemption and several other claims. Thus, at present, the Commonwealth case is before the Supreme Court of the Commonwealth of Puerto Rico by way of a petition of certiorari.

On April 17, 1974, this Court dismissed the complaint filed by Prinair relying on principles of federalism as they had been enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), and *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971).

An appeal was taken from such dismissal whereupon the United States Court of Appeals for the First Circuit, 520 F.2d 1342, vacated the judgment of this Court and remanded the case for further proceedings consistent with its opinion. After remand Prinair filed an amended complaint which limited the relief requested to that of a declaratory judgment and asserted additionally that the local wage and hours statute, Laws No. 96 of 1956 (29 LPRA 245 et seq.); No. 28 of 1946 (29 LPRA 295 et seq.) and No. 379 of 1948 (29 LPRA 271 et seq.) impose an undue burden on interstate commerce and can not be applied against acts performed outside the jurisdiction of the Commonwealth of Puerto Rico. Prinair also filed a motion for summary judgment on the declaratory relief sought concerning Laws No. 289 and 379.

Simultaneously, the Air Line Pilots Association, International, (Alpa), filed a motion to intervene which was granted by this Court on August 18, 1975.

Defendant Secretary of Labor filed an opposition to Prinair's request for summary judgment and Alpa filed a cross motion for summary judgment in its favor, together with a motion to dismiss. A hearing was held on November 14, 1975, where each party had an opportunity to argue and defend their corresponding position.

At the outset we are faced with the Court of Appeals' judgment which we have previously referred to (Slip Opinion, June 26, 1975, Coffin, Chief Judge). Different parties urge us to read that judgment in different ways.

The Court of Appeals' judgment was rendered on the appeal taken from the Order of this Court dated April 18, 1974, dismissing the complaint. In that order we stated that principles of federalism operated as a bar to entertain the action and relied on *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746 (1971) and *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764 (1971) in so holding.

The Court of Appeals for the First Circuit read our order as one dictated by a sense of being compelled to dismiss by a misplaced reliance on *Younger,* supra, and *Samuels,* supra. Thus, the Court of Appeals stated:

" . . . The district court dismissed the complaint below, relying principally on *Younger v. Harris,* [supra], and *Samuels v. Mackell,* [supra]. The district court indicated that it was compelled to dismiss under the law. [*Puerto Rico International Airlines, Inc. v. Silva Recio, Secretary,* U.S. Court of Appeals for the First Circuit, June 26, 1975, 520 F.2d 1342, p. 1344.]

. . . . .

We proceed from the same assumption as did the district court, that principles of federalism must enter into the decision whether to go forward with federal proceedings in equity when state court resolution of the vital issues in the case, the rights and obligations under the challenged statutes as well as their constitutionality, is in progress. The district court relied upon the doctrine of equitable restraint articulated in *Younger v. Harris,* supra, and *Samuels v. Mackell,* supra, requiring the federal court to refrain from interference when state criminal proceedings are pending. The state court proceeding in question here was, however, not criminal but civil in nature, brought in reliance upon a regulatory statute. Since the district court decision, the Supreme Court has expanded the doctrine of equitable restraint to include quasi-criminal civil proceedings, *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43

L.Ed.2d 482 (March 18, 1975), in which the state defendants, there as here, went to federal court after a state lower court ruling was rendered. *But we are not persuaded that the state suit in question here, brought by private individuals, not state officials, falls within the bounds of this new doctrine.* For to extend so far the doctrine would require reversal of *Brillhart v. Excess Ins. Co.,* 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942) (Frankfurter, J.), most recently reaffirmed in *Provident Tradesman's Bank & Trust v. Patterson,* 390 U.S. 102, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968) *which leaves declination of federal jurisdiction as a matter of discretion for the district court.* The district court's exercise of restraint was, therefore, not mandated . . . [*Puerto Rico International Airlines, Inc. v. Silva Recio,* supra, 520 F.2d pp. 1344–1345. Emphasis added].

Thus, we now consider whether in its exercise of judicial discretion this Court will decline the Federal jurisdiction in the case at bar. The answer to the issue thus posed is in the affirmative. Even when the doctrine in *Younger v. Harris,* supra; *Samuels v. Mackell,* supra, and *Huffman v. Pursue,* supra, are not applicable to the case at bar, these cases embody a line of reasoning and public policy which this Court, in its discretion, finds wise and helpful in cases as the present one. We do not feel mandated or bound by the doctrine of *stare decisis* in regard to these cases, but we feel enlightened by the same.

We have taken into consideration the countervailing interests of the parties. Plaintiff Prinair claims that the effect of our dismissal of its present action will subject it to a potential harm because it will not be promptly informed of its future liability and that its Federal preemption claim will not immediately be solved by a Federal court. Prinair goes on to add that should the Commonwealth Supreme Court decide its claim unfavorably, it will be forced to assume a substantial financial burden.[1]

---

1. In this regard the Court of Appeals noted: " . . . —a burden we would add, that would also be assumed if the final federal decision were adverse to the claimant." See p. 1345.

Prinair has a legitimate interest in a prompt decision of the Federal questions raised herein. Nevertheless, we are not convinced that expediency alone should justify our assumption of jurisdiction in the present case.

The Circuit Court of Appeals, in a footnote to its opinion of June 26, 1975, distinguished the doctrine of equitable restraint from the doctrine of abstention. (See supra, page 1344, Note 4). In that same instance it implied that abstention could possibly be in play inasmuch as "[there remains, of course, the possibility that they might be construed as not being applicable]". The parties herein have now raised the issue of abstention and, specifically, in its Memoranda intervenor Alpa has asked that this Court abstain from adjudicating Prinair's constitutional claims until the underlying and related state law questions are resolved. (See Alpa's memorandum filed on September 29, 1975, at page 11).

■ As the Circuit Court stated, the doctrine of equitable restraint derives from an accommodation of the principle of comity and the equity principle that relief will not be granted if there is an adequate remedy at law. See page 1344, footnote 4.

■ The doctrine of abstention as the Circuit Court pointed out, " . . . under certain circumstances, counsels federal deference to state courts on state issues." *Id.* The term "abstention" really embodies a set of various doctrines leading to the same point: cases in which the Federal courts relinquish their Federal jurisdiction. The different reasons for such jurisdictional relinquishment identify the different abstention doctrines.

■ The best known of these doctrines is the "Pullman type" abstention so titled after the case of *Railroad Commission of Texas v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In this type of cases a state action or state statute is being challenged in Federal courts as contrary to the Federal Constitution, and there are questions of state law which may be dispositive of the case. In that line of cases the Court will normally abstain from deciding the case but retains jurisdiction until the parties have had an opportunity to obtain from the state court a decision on the state issues involved. See Wright, *Law of Federal Courts*, Section 52 (1970).

■ There is another doctrine, sometimes confused with abstention, to the effect that if a state action is already pending, in which all issues can be effectively determined, the Federal court may refuse to entertain the action before it. *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952). It would seem that this line of cases embody the doctrine of equitable restraint based both on comity and the equity principle that relief will not be granted if there is an adequate remedy at law, in this instance a case pending before the state courts.

■ As we have already noted in the case at bar, the state case is now pending before the Commonwealth Supreme Court, the highest court of the Commonwealth of Puerto Rico. The traditional notions of comity do not stop short in regard to that Court. It seems to us that the same reasons and considerations which came into play in the doctrine of abstention should have a bearing in cases like the present one. This Court has long before established the due deference to the Courts of Puerto Rico:

"We think that the application of the doctrine of abstention is particularly appropriate in a case such as the present one which involves the construction and validity of a statute of the Commonwealth of Puerto Rico. For a due regard for the status of that Commonwealth under its compact with the Congress of the United States dictates, we believe, that it should have the primary opportunity through its courts to determine the intended scope of its own legislation and to pass upon the validity of that legislation under its own Constitution as well as under the Constitution of the United

States. *Wackenhut Corp. v. Aponte*, (D.C.P.R., 1966) 266 F.Supp. 401, p. 405."

*Wackenhut, supra,* was ratified by the Supreme Court of the United States in *Calero v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). See also *Fornaris v. Ridge Tool Co.*, 400 U.S. 41, 91 S.Ct. 156, 27 L.Ed.2d 174 (1970).

Against plaintiff Prinair's interests, which we have already mentioned, militate strong reasons of public policy which, in our discretion, we find that in equity and justice make this a proper case to defer our jurisdiction to the Courts of the Commonwealth of Puerto Rico.

Plaintiff is asking for a declaratory remedy which has long been known to be one of equitable nature and which should be granted only as a matter of judicial discretion. *Public Affairs Press v. Rickover*, 369 U.S. 111, 82 S.Ct. 580, 7 L.Ed.2d 604 (1962). A balancing of the equities in the present case leads us to conclude that plaintiff's harm, if any, by reason of our present dismissal of the action, is negligible when compared with the countervailing interests present in this case.

As the case now stands in the local forum, the Supreme Court of the Commonwealth of Puerto Rico has granted Prinair's petition for a writ of certiorari in which the Federal claims have been asserted as defenses. As the Circuit Court stated, there is a possibility that the Puerto Rico Supreme Court will find the local statute inapplicable to Prinair or itself resolve the Federal law dispute in Prinair's favor. (See page 1345). In that event, plaintiff's potential harm would disappear.

We are not ready to find that in allowing the case to progress in the Commonwealth Courts would involve an unreasonably greater delay in resolving the Federal issue than would be experienced in the Federal court. If plaintiff's main concern is expediency in learning its financial liability and having its Federal claims solved, then an overall view should be taken of our Federal judicial system. In so doing, it is evident that, in the best of cases, the highest Federal court from which an adjudication of Federal claims can be obtained is the United States Supreme Court. See Article III of the Constitution of the United States of America. The avenues to that venerable Court are varied and some are more direct than others. In the case at bar plaintiff Prinair has the possibility of availing itself of the one shortest road to the Supreme Court of the United States by appealing from the Puerto Rico Supreme Court's adverse decision in case such is the outcome of the case. See Title 28, United States Code, Section 1258.[2]

Also, as the Court of Appeals pointed out, if in fact it has properly preserved the Federal issue under *England v. Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), Prinair will have, at a later moment, a Federal court ruling on its claim. See p. 1346.

Wherefore, in view of what we have above discussed, plaintiff's motion for summary judgment is hereby denied as is, defendant's Secretary of Labor countermotion for summary judgment. Intervenor Alpa's motion for summary judgment in its favor is likewise denied. This party's motion to dismiss is hereby granted.

IT IS SO ORDERED.

---

2. Title 28, United States Code, Section 1258, provides as is herein pertinent:

"Final judgments or decrees rendered by the Supreme Court of the Commonwealth of Puerto Rico may be reviewed by the Supreme Court as follows:

(1) . . .

(2) By appeal, where is drawn in question the validity of a statute of the Commonwealth of Puerto Rico on the grounds of its being repugnant to the Constitution, treaties, or laws of the United States, and the decision is in favor of its validity.

(3) . . . "