54 F.3d 785
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 James BURROWS, Jr., Plaintiff-Appellee,
v.
CORE-MARK INTERNATIONAL, INC; Richard S. Dietal,
Defendants/Third-Party Plaintiff-Appellants.
v.
FLEET MAINTENANCE, INC. Third-Party Defendant-Appellee.
 No. 93-35569.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1995.
Decided May 10, 1995.
 
 1
 Before: PREGERSON and TROTT, Circuit Judges, and FITZGERALD,* Senior District Judge.
 
 
 2
 MEMORANDUM**
 
 I.
 
 3
 Core-Mark International, Inc. and Richard S. Dietal ("Core-Mark") appeal the district court's dismissal of third-party defendant Fleet Maintenance, Inc. ("FMI") and the jury's punitive damage award against Core-Mark in James Burrows, Jr.'s ("Burrows") negligence action arising out of an accident between Burrows' pickup truck and a Core-Mark delivery truck driven by Dietal. Core-Mark and Dietal asserted an indemnity claim against third-party defendant FMI.
 
 
 4
 Burrows brought this action against Core-Mark and Dietal alleging that Dietal negligently failed to discover defective brakes on the Core-Mark delivery truck he was driving ("Truck 7"). As a result of this negligence, Truck 7 impacted with the rear-end of Burrows' pickup truck causing injury to Burrows and damage to his truck. Core-Mark and Dietal denied Burrows's negligence allegations and asserted an indemnity claim against third-party defendant FMI contending that any damage to Burrows was a result of FMI's negligent failure to properly inspect, service and maintain Truck 7's brakes and braking systems.
 
 
 5
 On the third day of trial, the court granted FMI's motion for judgment as a matter of law and dismissed FMI as a third-party defendant and potential indemnitor. The jury subsequently awarded Burrows compensatory damages in the amount of $32,358.93 and punitive damages in the amount of $50,000 against Core-Mark and Dietal.
 
 
 6
 Judgment was entered on May 11, 1993. This appeal was timely filed on May 28, 1993. We have jurisdiction over this diversity action under 28 U.S.C. Sec. 1291.
 
 II.
 
 7
 We review the district court's grant of a directed verdict de novo. Zamalloa v. Hart, 31 F.3d 911, 913 (9th Cir. 1994). "[A] directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict." McGonigle v. Combs, 968 F.2d 810, 816 (9th Cir.), cert. dismissed, 113 S.Ct. 399 (1992). We must review the evidence in the light most favorable to appellant and draw all possible inferences in favor of appellant. Miller v. Fairchild Industries, Inc., 885 F.2d 498, 503 (9th Cir. 1989), cert. denied, 494 U.S. 1056 (1990).
 
 A. Dismissal of Indemnity Claim
 
 8
 On April 23, 1993, at the third day of trial, the court ruled from the bench that FMI was dismissed from the case. The court stated its reasons for dismissing FMI as follows:
 
 
 9
 Now, in this case, there are only two alternatives available to the jury. If the jury determines that Core-Mark acted reasonably under all the circumstances and is unaware, in other words, of the defective conditions of the brakes or reasonably should have been, there will be no liability on the part of Core-Mark and the indemnity issue -- you never reach it.
 
 
 10
 If, on the other hand, the jury determines that Core-Mark, through Mr. Dietal, or some other employee, was negligent, that negligence would consist, under the evidence in this case, of either failing to conduct a reasonable pre-trip inspection to ascertain the defective nature of the brakes, which is required by law, or negligently continuing to operate a vehicle with knowledge that the brakes were not functioning properly. Those are the issues in the case.
 
 
 11
 If the jury so finds, then Core-Mark will be held liable, or at least there will be a determination of negligence when they get to the injuries.
 
 
 12
 Given the policy, which is a strong policy, underlying the statutes and the regulations which mandate that commercial truck drivers inspect their vehicles prior to going on trips, it certainly mandates that they not operate a vehicle if they have reason to believe or reasonably should be aware of the fact that the vehicles have defective brakes. It would contravene public policy, under those circumstances, to allow Core-Mark to pass on liability and get indemnity from, in this case, FMI, by virtue of their negligence six weeks earlier, to allow that and send a message to trucking companies in the position of Core-Mark that would undercut the purpose and policy behind requiring daily inspections of these vehicles and specifically the braking systems.
 
 
 13
 (Trial Trans. 4/23/93: 610-12).
 
 
 14
 The court had evidence that federal motor carrier safety regulations promulgated by the Department of Transportation require commercial truck drivers to perform a pre-trip inspection of braking systems daily. 49 C.F.R. Sec. 392.7. The Oregon Commercial Motor Vehicle Operator's Manual also requires pre-trip inspection of the braking system. Or. Rev. Stat. Sec. 815.030(1), (2). These regulations forbid continued operation of any commercial truck found to be defective. If a defect is found, the regulations allow the operation of the truck only to the nearest place where repairs can be made.
 
 
 15
 FMI was responsible for performing regularly scheduled maintenance for Core-Mark's fleet of trucks. Truck 7 was scheduled for service every 6,000 miles. At the time of the accident, Truck 7 had been serviced 6 weeks and 4,400 miles earlier. It was the common practice for Core-Mark trucks, including Truck 7, to be brought to FMI for needed repairs between scheduled preventative maintenance. Of course, it was the responsibility of Core-Mark and its drivers to identify potential or actual problems and to deliver the trucks to FMI for necessary repairs.
 
 
 16
 FMI contends the brake lining on Truck 7 was adequate and conformed to specifications on February 28, 1990, after Truck 7's last scheduled visit for preventative maintenance at FMI prior to the accident. After the accident, the left rear brake shoe contained less than a one-quarter inch of lining. Both rear brake drums were worn beyond legal limits. One expert testified that the drum with a one-quarter inch was quite rare and could not be formed within 4,400 miles.
 
 
 17
 Appellants contend that potential lack of maintenance on the rear brakes created a factual dispute giving rise to a claim for indemnity. In an action for common law indemnity in Oregon, the plaintiff must plead and prove that "(1) he has discharged a legal obligation owed to a third party; (2) the defendant was also liable to the third party; and (3) as between the claimant and the defendant, the obligation ought to be discharged by the latter." Fulton Ins. v. White Motor Corp., 493 P.2d 138 (1972). (Citations omitted.)
 
 
 18
 Oregon courts employ a primary/secondary, active/passive fault analysis. "The person whose liability is primary, not secondary, or whose fault is active, not passive, should bear the loss." Burton v. Mackey, 104 Or. App. 361, 364, 801 P.2d 865, 866 (1990). In addition, Oregon courts focus attention to determine which party is primarily responsible for the plaintiff's harm. See, e.g., Scott v. Francis, 314 Or. 329, 333-34, 838 P.2d 596, 599 (1992). In cases applying Oregon law where a party was aware of defect and failed correct or acknowledge the defect, no right of common law indemnity existed. See Oregon Farm Bureau Ins. Co. v. E.L. Caldwll & Sons, Inc., 306 F. Supp. 835, 839 (D. Or. 1969); Siebrand v. Eyerly Aircraft Co., 196 F.Supp. 936, 940 (D. Or. 1961) (continued use of defective devise constitutes "active negligence", no right of indemnity).
 
 
 19
 In this case, there was evidence Dietal operated Truck 7 despite some knowledge that a problem existed with the braking system. Dietal continued to drive even after admitting an awareness that the brakes felt funny when approaching the weigh station in Woodburn, Oregon. Given this knowledge, in addition to the existence of federal and state regulations requiring Dietal to inspect and seek service of poorly working brakes, Core-Mark and Dietal were actively at fault and are therefore without the recourse of indemnity. The court instructed the jury that the failure of the brakes constituted negligence per se to defendants Core-Mark and Dietal.
 
 
 20
 In passing, Core-Mark and Dietal assert a claim that FMI supplied them with a defective chattel. This issue was not raised at trial and we therefore will not consider the issue on appeal. United States v. Smith, 924 F.2d 889 (9th Cir. 1991).
 
 
 21
 Core-Mark and Dietal contend that the determination of who is active and who is passive is a question of fact requiring a finding by the jury. The appellant misses the issue. The court ruled that, as a matter of law, sufficient facts had not been pled to establish that Core-Mark and Dietal could escape their regulatory duty to inspect the braking system prior to travel. Core-Mark and Dietal had the primary regulatory responsibility for making sure the braking system was functioning properly. The trial court did not err in granting a directed verdict in favor of FMI.
 
 B. Punitive Damage Award
 
 22
 "In reviewing an award of punitive damages, the role of the district court is to determine whether the jury's verdict is within the confines set by state law, and to determine, by reference to federal standards developed under Rule 59, whether a new trial or remittitur should be ordered. The court of appeals should then review the district court's determination under an abuse-of-discretion standard. Browning-Ferris Indus. v. Kelco Disposal, Inc., 492 U.S. 257, 279 (1989); Kennedy v. Los Angeles Police Dept., 901 F.2d 702, 707 n.3 (9th Cir. 1989) (jury has considerable discretion to award punitive damages, and its award, if supportable, will not be lightly disturbed). The Supreme Court has cautioned that a "general concer[n] of reasonableness ... properly enter[s] into the constitutional calculus." TXO Production Corp. V. Alliance Resources Corp., 113 S.Ct. 2711, 2720 (1993) (plurality).
 
 
 23
 1. Sufficiency of Evidence to Award Punitive Damages
 
 
 24
 Over defense objections, the court decided to submit the issue of punitive damages to the jury. The jury then awarded $50,000 in punitive damages to the plaintiff. "Punitive damages are allowed in Oregon to punish a willful, wanton or malicious wrongdoer and to deter that wrongdoer and other similarly situated from like conduct in the future." Oberg v. Honda Motor Co., 316 Or. 263, 282, 851 P.2d 1084, 1095 (1993) (internal quotations omitted), rev'd on other grounds, 114 S. Ct. 2331 (1994). Appellants now contend that a there was insufficient evidence for the jury to find willful, wanton, malicious conduct, or deliberate indifference to the rights of others, and therefore assert that a prima facie case for punitive damages was not made.[1]
 
 
 25
 The field notes of mechanic Tracey Harris who was sent to inspect the truck after the accident on April 10, 1990 are as follows:
 
 
 26
 Load truck. Go to Salem. Check brakes out. Test drive unit. It had been very -- it had very little brakes. Check adjustment. Fronts okay. Rears were out of adjustment. Left rear had very little shoes left and drum has about one-quarter-inch lip to it. Adjust brakes up on right. Truck would stop now, but still won't lock them up. According to driver, truck loaded very heavy. Called shop, told them what I had found, advised to have them off load truck and bring to shop. Returned to shop. Clean up. Took break.
 
 
 27
 These notes were admitted into evidence. Dietal testified that he could not remember performing a pre-trip inspection as required by law. The fact that the rear brakes were out of adjustment is circumstantial evidence that Dietal did not preform a pre-trip inspection. The FMI mechanic testified Dietal admitted that the brakes felt funny. We consider the evidence sufficient to conclude that Dietal acted with deliberate indifference in operating the Core-Mark truck. Therefore, there was sufficient evidence for the jury to consider punitive damages and for the jury to award punitive damages.
 
 2. Punitive Damage Jury Instruction
 
 28
 "Whether a jury instruction misstates the elements that must proved at trial is a question of law that is reviewed de novo." Caballero v. City of Concord, 956 F.2d 204, 205 (9th Cir. 1992). However, an error in instructing the jury in a civil case does not require reversal if it more probably than not is harmless. Jenkins v. Union Pacific R. Co., 22 F.3d 206, 210 (9th Cir. 1994).
 
 
 29
 Oregon Revised Statute 41.315, requires the plaintiff to prove facts supporting an award of punitive damages by clear and convincing evidence. The court gave the following instruction:
 
 
 30
 The plaintiff must prove each item of damages by a preponderance of the evidence....
 
 
 31
 There are three types of damages that you may consider in this case: economic, noneconomic, and punitive damages, which I will explain to you.
 
 
 32
 The judge then stated in subsequent instructions that Burrows must prove his punitive damages claim by clear and convincing evidence. Appellants contend that the failure to reconcile these potentially opposing instructions requires us to reverse and remand for a new trial on the punitive damage issue.
 
 
 33
 The appellants failed to object to the instruction they seek to correct on appeal. Being a civil case, we need not address their objection on appeal. Fed. R. Civ. P. 51. Even if we chose to address the instruction, the instructions as a whole state that punitive damages must be proved by clear and convincing evidence.
 
 
 34
 For the reasons set forth above, we affirm the dismissal of the third-party defendant and the punitive damages determined by the jury in the district court.
 
 
 35
 AFFIRMED.
 
 
 
 *
 The Honorable James M. Fitzgerald, Senior United States District Judge for the District of Alaska, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3
 
 
 [1]
 The parties do not raise a due process challenge to the award of punitive damages. Thus we need not analyze the award pursuant to Morgan v. Woessner, 997 F.2d 1244 (9th Cir. 1993), cert. dismissed, 114 S. Ct. 671 (1994)